**UNITED CABLE TELEVISION OF JEFFCO, INC., a Colorado Corporation, Plaintiff–Appellant,**

v.

**MONTGOMERY LC, INC., f/k/a Montgomery Line Construction, Defendant–Appellee.**

No. 95CA1320.

Colorado Court of Appeals, Div. II.

Nov. 29, 1996.

Rehearing Denied Jan. 30, 1997.

Certiorari Denied Sept. 8, 1997.

Senn Lewis Visciano & Strahle, P.C., Frank W. Visciano, Brian J. Reichel, Denver, for Plaintiff–Appellant.

Mann & Shappell, W. Berkeley Mann, Jr.; Hall & Evans, L.L.C., Alan Epstein, Denver, for Defendant–Appellee.

Opinion by Chief Judge STERNBERG.

In this indemnification action, plaintiff, United Cable Television of Jeffco, Inc., (United) appeals the dismissal before trial of its indemnity claim against defendant, Montgomery LC, Inc., f/k/a Montgomery Line Construction Company (Montgomery). We affirm in part, reverse in part, and remand for further proceedings.

In 1984, United hired Montgomery to remove television cables attached to utility poles owned by Public Service Company (PSC). A Montgomery employee was injured when he cut a cable and the pole on which he was standing fell to the ground. The employee sued PSC, claiming that the pole had not been properly maintained. PSC claimed at trial that the employee's injuries

were not caused by its failure properly to inspect or maintain the utility pole, but were the result of his actions when removing the television cables.

The jury returned a verdict against PSC, attributing 85 percent negligence to PSC under a comparative negligence analysis. PSC then sought indemnification from United under an express indemnity contract clause in a pole license agreement between United and PSC. PSC also filed an indemnity claim against Osmose Wood Preserving, Inc. (Osmose), with whom PSC had contracted to maintain and inspect its poles. PSC later settled the judgment in favor of Montgomery's employee for a lesser amount.

At the trial on PSC's claim for indemnification against United, the court held that PSC's indemnification action was not precluded by the exclusive remedy provision of the Workers' Compensation Act (Act). This judgment was later affirmed in *Public Service Co. v. United Cable Television of Jeffco, Inc.*, 816 P.2d 289 (Colo.App.1991), *rev'd on other grounds*, 829 P.2d 1280 (Colo.1992).

Following a settlement of PSC's indemnity claim against United, PSC assigned its indemnity claim against Osmose to United. United sued Osmose pursuant to its assignment from PSC and, in a separate action, sued Osmose and Montgomery to recover its settlement payment to PSC. These district court actions were consolidated.

United's initial claim against Osmose and Montgomery was based solely on the recovery from PSC awarded to Montgomery's employee, and advanced only the common law theories of contribution, indemnity, unjust enrichment, and equitable relief. United initially presented no claim based on any express contractual agreement between the present parties or their predecessors in interest.

Montgomery moved for dismissal on the pleadings, arguing that the Act precluded United from asserting a claim against Montgomery. In response to Montgomery's motion to dismiss, United claimed that an agreement between Montgomery and United existed, that the agreement contained an express indemnity provision, but that many documents, including all copies of the agreement between United and Montgomery, had been discarded during the course of an expansion of United's office. United presented evidence in the form of affidavits and deposition testimony regarding the existence and terms of the agreement. Montgomery denied that an indemnification agreement existed. After allowing United additional time to present the agreement or a copy thereof, the court dismissed United's indemnity claim with prejudice. This appeal followed.

## I.

On appeal, United argues that it should have been allowed to present evidence at trial of an express indemnification agreement, and also that an implied contract to indemnify arose from the conduct of the parties. We first address United's express contract argument.

**A. The Express Contract Exception to the Exclusive Remedy Clause of the Act**

We agree with United that the exclusive remedy provision of the Act, § 8–41–102, C.R.S. (1996 Cum.Supp.), does not bar its claims.

■ Generally, employers who comply with the Act's insurance provisions gain immunity from lawsuits filed by injured employees and suits by third parties who claim a right of indemnity against the employer. *Hilzer v. MacDonald*, 169 Colo. 230, 454 P.2d 928 (1969).

■ Section 8–41–102 provides that:

An employer who has complied with the provisions of articles 40 to 47 of this title ... shall not be subject to the provisions of section 8–41–101; nor shall such employer ... be subject to any other liability for the death of or personal injury to any employee, except as provided in said articles; and all causes of action, actions at law, suits in equity, proceedings, and statutory and common law rights and remedies for and on account of such death or of personal injury to any such employee and accruing to any person are abolished except as provided in said articles.

The immunity of employers under the Act extends to actions based on common law indemnity claims. However, there is an exception to the exclusive remedy clause where an express contract or pre-existing legal relationship exists. *Public Service Co. v. District Court,* 638 P.2d 772 (Colo.1981).

In a previous action related to this claim, a division of this court stated that the Act does not immunize an employer from a claim based on an express indemnity agreement. *Public Service Co. v. United Cable Television of Jeffco, Inc.,* 816 P.2d 289 (Colo.App.1991), *supra. See also Borroel v. Lakeshore, Inc.,* 618 F.Supp. 354 (D.Colo.1985) (indemnification provision in lease agreement valid notwithstanding exclusive remedy provision of Act).

Hence, if United could prove the existence of an express indemnity agreement, it could pursue its claim.

### B. Admissibility of Secondary Evidence

■ United contends that the trial court erred in not allowing it to present evidence to the finder of fact of the existence of an express contractual agreement for indemnification between United and Montgomery. We agree.

■ At the outset we note that, pursuant to C.R.C.P. 12(b), Montgomery's motion to dismiss United's claim must be analyzed as a motion for summary judgment because matters outside the pleadings were presented and considered. *See Rosenthal v. Dean Witter Reynolds, Inc.,* 908 P.2d 1095 (Colo.1995).

Summary judgment is a drastic remedy and is appropriate only if the pleadings, affidavits, and other relevant documents establish the absence of a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Graven v. Vail Associates, Inc.,* 909 P.2d 514 (Colo.1995).

In determining whether summary judgment is proper, the nonmoving party must receive the benefit of all favorable inferences that reasonably may be drawn from the undisputed facts, and a reviewing court must resolve all doubts as to whether an issue of fact exists against the moving party. *Kaiser*

*Foundation Health Plan v. Sharp,* 741 P.2d 714 (Colo.1987); *Jones v. Board of Education,* 854 P.2d 1386 (Colo.App.1993).

If United's affidavit established a genuine triable issue of material fact, summary judgment would be inappropriate.

In granting Montgomery's motion to dismiss the claim, the trial court relied upon CRE 1002 and 1003, and on the holdings in *Williams v. White Mountain Construction Co.,* 749 P.2d 423 (Colo.1988), and *Tex–Ark Joist Co. v. Derr & Gruenewald Construction Co.,* 749 P.2d 431 (Colo.1988). We do not agree with the trial court.

■ CRE 1002 and 1003, the so-called "best evidence" rules, provide that to prove the contents of a writing, the original writing or a duplicate is required. However, as an exception to this rule, CRE 1004(1) provides that the original of a written document is not required, and other evidence of its contents is admissible, "if all originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith." Therefore, when the proponent cannot produce the original of a written document, because of its purported loss or destruction, the trial court should admit secondary evidence, and such evidence may be excluded only if the proponent's bad faith caused the loss or destruction of the original document. *Rodriguez v. Schutt,* 896 P.2d 881 (Colo.App.1994), *rev'd in part on other grounds,* 914 P.2d 921 (Colo. 1996).

The most common means of proving loss or destruction of the original document is through circumstantial evidence. 5 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 1004(1)[05] (1996). Here, United offered secondary evidence in the form of a subsequent contract between the parties and an affidavit stating that an indemnification agreement existed, that it may have been lost or destroyed, that it could not be located despite a diligent search, and that it contained specific provisions for indemnification. Montgomery argues that no indemnity agreement ever existed.

CRE 1008 sets forth the proper functions of the court and the factfinder when resolv-

ing questions such as the one presented here. It states that:

> [W]hen an issue is raised (a) whether the asserted writing ever existed, or ... (c) whether other evidence of contents correctly reflects the contents, the issue is for the trier of fact to determine as in the case of other issues of fact.

 The strength of United's evidence goes not to the admissibility of the evidence but to its weight, and the issue of the existence of an agreement should be resolved by the trier of fact, not by the trial court.

It may well be that United's evidence as to the existence and terms of the contract would prove to be insufficient to convince the trier of fact. However, United had no opportunity to prove the existence of an express contract at trial, because the court dismissed its claim before trial.

*Williams v. White Mountain Construction Co., supra,* and *Tex–Ark Joist Co. v. Derr & Gruenewald Construction Co., supra,* both involved third-party contribution claims where no independent contractual agreement existed. In both cases, the supreme court affirmed the summary judgment or dismissal of third-party complaints. And, in each case, the court determined that no express contractual agreement existed between the parties. Here, in contrast, there was some evidence that an indemnification agreement existed.

#### C. Sufficiency of Secondary Evidence

 Although United offered secondary evidence in the form of affidavits regarding the loss or destruction of the document and regarding the terms of the contract, Montgomery argues, without supporting authority, that secondary evidence must be presented with more specificity. We are not persuaded.

CRE 1004 was adopted verbatim from Fed.R.Evid. 1004. The advisory committee notes to the federal rule read in relevant part:

> The rule recognizes no 'degrees' of secondary evidence. While strict logic might call for extending the principle of preference beyond simply preferring the original, the

formulation of a hierarchy of preferences, and a procedure for making it effective is believed to involve unwarranted complexities. Most, if not all, that would be accomplished by an extended scheme of preferences will, in any event, be achieved through the normal motivation of a party to present the most convincing evidence possible and the arguments and the procedures available to his opponent if he does not.

A leading commentary on the law of evidence lends further support to this interpretation:

> [O]nce Rule 1004's conditions are met, the party seeking to prove the contents of a writing ... may do so by any kind of secondary evidence ranging from photographs and handwritten copies to oral testimony of a witness whose credibility is suspect. Of course, the opponent may attack the secondary evidence's sufficiency, including the witness's credibility. This attack, however, goes not to the evidence's admissibility but to its weight and is a matter for the trier of fact to resolve.

5 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 1004[01] (1996).

Montgomery argues that United's evidence offered no more specificity than "conclusory" statements. We do not agree.

It is true that some of United's evidence could reasonably be described as conclusory. However, one United employee's affidavit stated, in part:

> As United's construction supervisor, I negotiated ... this contract on behalf of United.
>
> Any work performed by Montgomery for United in and after 1979 was done pursuant to the terms of the parties' written base contract. Among other things, the base contract required Montgomery to indemnify United for its employees' accidents while performing work for United.

This statement is more than conclusory and could create a reasonable inference for a trier of fact to conclude that those contract terms existed. *See, e.g., Remington Arms Co. v. Liberty Mutual Insurance Co.,* 810 F.Supp. 1420 (D.Del.1992).

Citing *Toco Hills, Inc. v. Rollins Protective Services Co.,* 179 Ga.App. 823, 348 S.E.2d 65 (1986), Montgomery also argues that parties must first establish conclusively the existence of the original writing before they may present secondary evidence as to its contents. However, in *Toco Hills,* the facts indicated that the proponent of the evidence offered only "an affidavit containing only contentions and conclusions without reference to any factual basis." *Toco Hills, Inc. v. Rollins Protective Services Co., supra,* at 67.

Here, in contrast, United offered an affidavit that there was a contract between United and Montgomery which contained an indemnification agreement. Hence, the *Toco Hills* ruling is not pertinent here.

■ Generally, questions regarding the foundation for admission of secondary evidence are within the trial court's discretion, and the trial court's determination will not be disturbed unless there is clear evidence of mistake amounting to error of law. *Decker v. Browning–Ferris Industries,* 903 P.2d 1150 (Colo.App.1995); *see also Development Corp. of America v. United Bonding Insurance Co.,* 413 F.2d 823 (5th Cir.1969); *Seiler v. Lucasfilm, Ltd.,* 613 F.Supp. 1253 (N.D.Cal.1984). Here, we conclude that the trial court made such an error by not applying the CRE 1004(1) exception and by dismissing the claim on these evidentiary grounds.

## II.

■ United also argues that Montgomery had an implied duty to indemnify United, based on Montgomery's implied obligation to perform its cable removal operations for United in a workmanlike manner. On this issue, we perceive no error in the trial court's ruling.

In support of its argument, United cites *Ryan Stevedoring Co. v. Pan–Atlantic S.S. Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), in which the court suggests that there may be an implied obligation to use care in a service contract, accompanied by an implied agreement of indemnity for breach of that obligation. The *Ryan* case involved a

stevedoring contract, and the so-called *Ryan* doctrine has been adopted in only a minority of jurisdictions.

Colorado courts, and the majority of other states, have not adopted the *Ryan* doctrine. *See* 2B A. Larson, *Law of Workmen's Compensation* § 76.71 (1996) (fn. 2). To the contrary, in a series of cases, Colorado courts have held that a statutory employer is immune from third-party common law indemnity claims. *See Hilzer v. MacDonald, supra; Holly Sugar Corp. v. Union Supply Co.,* 194 Colo. 316, 572 P.2d 148 (1977). Therefore, we reject United's argument.

The judgment of dismissal is reversed, and the cause is remanded for further proceedings consistent with this opinion.

PLANK and KAPELKE, JJ., concur.