**Rodney E. PIKE and Rita J. Pike, Plaintiffs–Appellants,**

v.

**AMERICAN STATES PREFERRED INSURANCE COMPANY, an Indiana corporation, Defendant–Appellee.**

No. 00CA0400.

Colorado Court of Appeals, Div. I.

Feb. 28, 2002.

Rehearing Denied April 4, 2002.

Certiorari Denied Oct. 15, 2002.

Norton Frickey, P.C., Robert B. Carey, Colorado Springs, Colorado, for Plaintiffs–Appellants.

Hall & Evans, L.L.C., Alan Epstein, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge METZGER.

Plaintiffs, Rodney E. Pike and Rita J. Pike, appeal the summary judgment entered in favor of defendant, American States Preferred Insurance Company. We affirm.

Anthony and Loretta Estrada had a homeowners policy with American States. On October 1, 1996, plaintiffs' fifteen-year-old son and the Estradas' teenage son, took the Estradas' go-cart out of their home garage for a ride, contrary to the Estradas' rule that the go-cart was not to be used without parental supervision. Plaintiffs' son was driving the go-cart on a public roadway some distance from the Estradas' home when he was struck and killed by a pickup truck.

Plaintiffs brought a wrongful death action against the Estradas, asserting claims for negligence and negligent entrustment. American States reviewed the Estradas' homeowners policy, interviewed them about the facts surrounding the accident, and determined that no coverage existed. It re-

fused to defend the Estradas in the lawsuit and refused to settle the claim.

After entry of a stipulated default judgment for plaintiffs in the wrongful death action, plaintiffs and the Estradas entered into a "Bashor" agreement, *see Northland Insurance Co. v. Bashor*, 177 Colo. 463, 494 P.2d 1292 (1972), whereby the Estradas assigned all claims they might have against American States to plaintiffs. Plaintiffs then filed this action against American States, alleging claims for (1) breach of the insurance contract, (2) breach of the duty to settle or defend the Estradas by denying coverage, and (3) breach of the implied covenant of good faith and fair dealing. Plaintiffs and American States filed cross-motions for summary judgment; the trial court denied plaintiffs' motion and entered summary judgment in favor of American States. Plaintiffs appeal.

Summary judgment is a drastic remedy that is appropriate only if the pleadings and supporting documents demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988). Our review of an order granting summary judgment is de novo. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board*, 901 P.2d 1251 (Colo.1995).

## I.

Plaintiffs contend the trial court erred in determining that the "insured location" and "dead storage" exceptions to the homeowners policy's automobile exclusion did not apply and that, therefore, no coverage existed. We find no error.

■ Because an insurance policy is a contract, the principles of contract interpretation are applicable. *Chacon v. American Family Mutual Insurance Co.*, 788 P.2d 748 (Colo.1990). Unless the policy language is ambiguous, it must be enforced as written. *State Farm Mutual Automobile Insurance Co. v. Stein*, 940 P.2d 384 (Colo.1997).

■ Language in an insurance contract is ambiguous if it is susceptible of more than one reasonable interpretation. *Hecla Min-*

*ing Co. v. New Hampshire Insurance Co.*, 811 P.2d 1083 (Colo.1991). To determine whether insurance policy language is ambiguous, the court must consider the allegations in the complaint in the underlying action in light of the relevant policy language. *Terra-Matrix, Inc. v. United States Fire Insurance Co.*, 939 P.2d 483 (Colo.App.1997).

We review de novo a trial court's interpretation of an insurance contract and its determinations concerning ambiguity. *Union Insurance Co. v. Houtz*, 883 P.2d 1057 (Colo. 1994).

The Estradas' homeowners policy provided coverage for an "occurrence," which the policy defined as an "accident resulting in personal injury or property damage." The term "accident" was not defined.

The motor vehicle exclusion to that coverage stated, as relevant here:

Personal Liability and ... Medical Payments to Others do not apply to 'bodily injury' or 'property damage':

. . .

f.   arising out of:

(1) the ownership, maintenance, [or] use ... of motor vehicles or all other motorized land conveyances ... owned or operated by ... an 'insured';

(2) the entrustment by 'insured' of a motor vehicle or any other motorized land conveyance to any person; or

(3) statutorily imposed vicarious parental liability for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

However, the policy provided certain exceptions to the motor vehicle exclusion. As pertinent here, it stated:

This exclusion does not apply to:

. . .

(2) a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration *and:*

(b) *owned by an 'insured' and on an 'insured location';* [or]

. . .

(4) a vehicle or conveyance not subject to motor vehicle registration which is:

. . .

(c) *in dead storage on an 'insured location.'* (emphasis added)

The parties stipulated that the go-cart was a "motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration," within the meaning of paragraph (2) of the policy's exceptions to the motor vehicle exclusion. Thus, the dispositive question is whether the go-cart was either "owned by an 'insured' and on an 'insured location'" (paragraph 2(b)) or "in dead storage on an 'insured location'" (paragraph 4(c)) at the time of the accident here.

The policy defined an "insured location" as:

a. the 'residence premises';

b. the part of other premises, other structures and grounds used by you as a residence and:

  (1) which is shown in the Declarations; or

  (2) which is acquired by you during the policy period for your use as a residence;

c. any premises used by you in connection with a premises in 4.a. or 4.b. above;

d. any part of a premises:

  (1) not owned by an 'insured'; and

  (2) where an 'insured' is temporarily residing;

e. vacant land, other than farm land, owned by or rented to an 'insured';

f. land owned by or rented to an 'insured' on which a one or two family dwelling is being built as a residence for an 'insured';

g. individual or family cemetery plots or burial vaults of an 'insured'; or

h. any part of a premises occasionally rented to an 'insured' for other than 'business' use.

The trial court determined that the "insured location" was the Estradas' residence premises, and the other structures and grounds used by the Estradas as a residence. It reasoned that, because the accident did not occur on an insured location, no coverage existed.

### A.

■ Plaintiffs argue this was error. They first contend the "Estradas' negligence in failing to secure the go-cart is the 'occurrence' that is the subject of this lawsuit." Thus, they reason, because this failure to secure the go-cart occurred in the garage, and because the garage was an "insured location," the automobile exclusion did not apply and coverage existed. We agree with the trial court.

In deciding *when* an "accident" occurred, for purposes of determining what constitutes an "occurrence," the supreme court, in *Samuelson v. Chutich*, 187 Colo. 155, 160, 529 P.2d 631, 634 (1974)(involving an explosion six years after a gas line was improperly laid), held: "'The "accident" causing injury in this case occurred at the time of the explosion, not when the allegedly wrongful act was committed.'" The court relied on *Century Mutual Insurance Co. v. Southern Arizona Aviation, Inc.*, 8 Ariz.App. 384, 386, 446 P.2d 490, 492 (1968), which held that the word "accident" in an insurance policy "clearly implies a misfortune with concomitant damage to a victim, and not the negligence which eventually results in that misfortune."

The *Samuelson* court bolstered this conclusion by adopting the reasoning in *Home Mutual Fire Insurance Co. v. Hosfelt*, 233 F.Supp. 368, 370 (D.Conn.1962): "To stretch the scope of 'accident' backward in time to reach the date of the earliest beginning of any prior event which might be regarded as having a causal relation to the unlooked-for mishap would introduce ambiguity where none now exists." The majority of jurisdictions adhere to this rule. *See generally*, M. McMahon, Annotation, *Event Triggering Li-*

*ability Insurance Coverage as Occurring Within Period of Time Covered by Liability Insurance Policy Where Injury or Damage is Delayed—Modern Cases,* 14 A.L.R.5th 695 (1993).

We apply analogous reasoning in determining *where* the "accident" occurred here. It is undisputed that the "accident," that is, "damage to a victim," here occurred at an intersection of two public roads, some distance from the Estradas' property. Because the location of the damage, and not the location of the Estradas' alleged failure to secure the go-cart, is the pivotal fact, the trial court correctly determined that the automobile exclusion applied and no coverage existed.

We reject plaintiffs' alternative argument that the phrase "on an insured location" is ambiguous. Their reliance on decisions from other jurisdictions for this proposition is misplaced in light of the clearly articulated rule in *Samuelson v. Chutich, supra.*

### B.

■ For substantially similar reasons, we agree with the trial court that the go-cart was not in "dead storage" at the time of the accident and, therefore, no coverage existed.

The term "dead storage" is not defined in the policy. However, we agree with the trial court that "it must be something more than 'storage,'" and adopt the reasoning in *American Family Mutual Insurance Co. v. Van Gerpen,* 151 F.3d 886, 888 (8th Cir.1998):

> [D]ead storage is clearly a type of storage, and the state of being in storage is inconsistent with the state of being in use. The "dead" in "dead storage" suggests, at the least, that the engine would not be running. Reasonable minds might differ as to whether dead storage requires disconnecting the battery, draining the radiator, emptying the gas tank, or placing the [vehicle] up on blocks, but it is unreasonable to suggest that a [vehicle] is in "dead storage" when the engine is operating, the wheels are turning, and several people are riding around on it.

*See also* P. Rambow, *A Practical Guide on Emerging Issues in Insurance Policy Language,* 27 Wm. Mitchell L. Rev. 1105 (2000).

Clearly, here, the go-cart was being operated on a public road when the accident occurred. Thus, the trial court was correct in concluding that the go-cart was not in dead storage on an insured location at the time of the accident.

Our review of the cases plaintiffs cite from other jurisdictions does not persuade us otherwise. Even if authorities are split on the meaning of "dead storage," the policy here, when read in conjunction with Colorado law, provides coverage only when such storage is "on an 'insured location'" at the time of the accident. The go-cart was not on an insured location and was not in storage, dead or otherwise, when the accident here occurred.

Consequently, because the material facts were undisputed, the salient policy terms were not ambiguous, and the relevant law precluded coverage, the entry of summary judgment in favor of American States was correct.

### II.

■ We do not agree with plaintiffs that the question of coverage for their negligence claim, insofar as it is premised on a negligent entrustment or negligent supervision theory, should survive summary judgment.

In *Northern Insurance Co. v. Ekstrom,* 784 P.2d 320 (Colo.1989), the supreme court held that, where, as here, multiple causes of injury are alleged, a claim is barred by the automobile exclusion unless it arises from nonautomobile related conduct and is independent of any ownership, operation, or use of an automobile.

Here, there was "no independent nonauto-related act which would take the claim outside the scope of the motor vehicle exclusionary clause." *See Taylor v. American Fire & Casualty Co.,* 925 P.2d 1279, 1282–83 (Utah Ct.App.1996). Thus, the trial court correctly rejected this claim.

### III.

Plaintiffs also contend the trial court erred in determining that American States had no duty to defend and in entering summary

judgment on their breach of contract and bad faith claims. We find no error.

In determining whether an insurer has a duty to defend, courts must examine the allegations in the complaint filed in the underlying action. If those allegations potentially come within policy coverage, or if there is even some doubt, the insurer must defend the claim. Conversely, if there is no coverage, there is no duty to defend. *See Constitution Associates v. New Hampshire Insurance Co.,* 930 P.2d 556 (Colo.1996). An insurer has a duty to defend unless it can show that: (1) the allegations in the complaint against the insured describe only situations that are within the policy exclusions; and (2) there is no factual or legal basis on which the insurer might be held liable to indemnify the insured. *See Hecla Mining Co. v. New Hampshire Insurance Co., supra.*

The allegations in the complaint here unequivocally show that the accident did not occur on an insured location. Moreover, even if we additionally consider the facts ascertained by American States in its investigation, *see TerraMatrix, Inc. v. United States Fire Insurance Co., supra,* we reach the same conclusion that a factual basis is lacking. And, because the law in Colorado would allow coverage under this policy only if the accident had occurred on an insured location, no legal basis exists on which American States might be held liable.

Consequently, the trial court correctly held that, absent both a factual and a legal basis for liability, American States had no duty to defend.

The judgment is affirmed.

Judge VOGT and Judge DAILEY concur.