Lisa SERNA, Plaintiff–Appellant and Cross–Appellee,

v.

KINGSTON ENTERPRISES, a Nebraska corporation, Defendant–Appellee and Cross–Appellant.

No. 01CA0537.

Colorado Court of Appeals, Div. II.

Sept. 26, 2002.

Certiorari Denied June 23, 2003.

Norton Frickey, P.C., L. Dan Rector, Colorado Springs, Colorado, for Plaintiff–Appellant and Cross–Appellee.

McClain, Drexler & Matthews, LLC, Michael E. Oldham, Michael J. Decker, Denver, Colorado, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge DAILEY.

In this indemnification action, plaintiff, Lisa Serna, appeals from a summary judgment and an award of attorney fees and costs to defendant, Kingston Enterprises. Defendant cross-appeals the trial court's determination that Serna's lawyers are not personally liable for its attorney fees. We affirm in part and reverse in part.

Serna was fifteen years old when defendant, her employer, instructed her to drive from one of its franchise locations to another. En route, Serna's car collided with another car, resulting in serious injury to the passengers of the other car.

The passengers sued both Serna and defendant, alleging that Serna was negligent and that, as her employer, defendant was liable based on a respondeat superior theory. The passengers, who initially failed to complete service of process on Serna, settled with defendant for $850,000. After serving process upon Serna, they also settled with her.

Under her settlement with the passengers, Serna agreed to: (1) allow entry of a $1.5 million judgment against her; (2) employ the passengers' attorneys to sue defendant in an indemnity action; (3) allow the passengers to make all decisions with respect to her lawsuit against defendant; (4) refuse to settle with defendant without the passengers' prior approval; and (5) pay monies recovered from defendant to the passengers. In return, the passengers accepted $40,000 from Serna's insurance carrier, agreed not to execute on the remainder of the $1.5 million judgment against Serna, and promised to pay Serna half of any monies recovered from defendant in excess of $1 million.

Pursuant to her settlement, Serna instituted the present action against defendant. The trial court, however, granted defendant's motion for summary judgment, holding that, as a matter of law, Serna's claim was barred by the exclusivity provision of the Workers' Compensation Act (WCA), § 8–40–101, et seq., C.R.S.2002, and by the Uniform Contribution Among Tortfeasors Act (UCATA), § 13–50.5–102, C.R.S.2002. The trial court awarded defendant attorney fees and costs under § 13–17–102, C.R.S.2002.

## I. Summary Judgment

Serna contends that the trial court erred in dismissing her claims. We disagree, but base our decision on grounds somewhat different from those relied upon by the trial court.

Summary judgment is only appropriate if there is no genuine issue as to any material fact. *Polk v. Hergert Land & Cattle Co.*, 5 P.3d 402, 404 (Colo.App.2000). On appeal, we review a summary judgment de novo. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board*, 901 P.2d 1251, 1256 (Colo.1995).

Because the material facts in this case are not in dispute, we can resolve this appeal as a matter of law.

### A. Workers' Compensation

Initially, Serna contends that the trial court erred in determining that the WCA's

exclusivity provision barred her claim. We agree.

■ The WCA is an employee's exclusive remedy for compensation by an employer for certain work-related injuries. *See Colorado Compensation Insurance Authority v. Baker*, 955 P.2d 86, 88 (Colo.App.1998)("if an injury comes within the coverage of the Act, an action for damages is barred even though a particular element of damages is not compensated for").

Under the WCA, an employee surrenders, as against his or her employer, "any cause of action, action at law, suit in equity, or statutory or common-law right, remedy, or proceeding for or on account of [his or her] *personal injuries or death.*" Section 8–41–104, C.R.S.2002 (emphasis added); *see also* § 8–41–102, C.R.S.2002 (abolishing employee's remedies against employer for or on account on employee's "death" or "personal injury").

■ Conversely, however, an employee does not, under the WCA, surrender any cause of action for injuries apart from "personal injuries." *See Lord v. Souder*, 748 A.2d 393, 403 (Del.2000)(workers' compensation "exclusivity provision does not apply to all injuries arising out of and in the course of employment but, rather, only to 'personal' injuries").

■ No Colorado appellate opinion has determined the precise meaning of the terms "personal injury" or "personal injuries" in §§ 8–41–102 and 8–41–104. Their meaning may, however, be discerned from the type of injuries for which the WCA provides a remedy. The express purpose of the WCA is to provide "quick and efficient delivery of disability and medical benefits," § 8–40–102(1), C.R.S.2002, for job-related physical or mental injuries. *See* §§ 8–41–301(2)(a) (mental impairment), 8–42–107 (physical injuries), C.R.S.2002; *Lucero v. Climax Molybdenum Co.*, 732 P.2d 642, 647 (Colo.1987)(WCA provides compensation for "specified physical or mental injuries").

■ We conclude that, as used in the WCA, the terms "personal injury" and "personal injuries" refer to the job-related physi-

cal or mental injuries of an employee, *see* 3 *Larson's Workers' Compensation Law* ch. 55 at 55–1 (2002)(" 'Personal injury' includes any harmful change in the body"), and that, consequently, the WCA's exclusivity provision bars actions for or on account of such injuries of an employee.

Here, Serna seeks redress from defendant not on account of physical or mental injuries she sustained, but, rather, on account of the economic liability she incurred after she injured others. Because this economic liability does not qualify as a compensable "personal injury" under the WCA, her indemnity action against defendant is not barred by the WCA. *See, e.g., Williams v. Caruso*, 966 F.Supp. 287, 294 (D.Del.1997)("claims for injuries to [employee's] economic interests" were not preempted by Delaware's workers' compensation statute); *Gomez v. Acquistapace*, 50 Cal.App.4th 740, 749, 57 Cal.Rptr.2d 821, 826 (1996)("injuries which trigger application of the exclusive remedy rule are injuries 'to the worker's *person*, as opposed to his *property*' "); *Lord v. Souder, supra*, 748 A.2d at 403 (harm affecting "a proprietary or financial interest" is "not a 'personal injury' within the purview of the Workers' Compensation statute"); *Cole v. Chandler*, 752 A.2d 1189, 1196 (Me.2000)("economic or reputational injuries, if any, do not constitute personal injuries, as they are not physical or mental injuries," and "recovery of such damages is not precluded by the exclusivity provision").

Defendant cites *United Cable Television of Jeffco, Inc. v. Montgomery LC, Inc.*, 942 P.2d 1230, 1232–33 (Colo.App.1996), for the proposition that employers are immune under the WCA for common law indemnity claims. However, that case dealt with a third-party suit against an employer seeking indemnification for monies paid out in connection with an employee's physical injury. Further, the division in that case stated that "there is an exception to the [WCA's] exclusive remedy clause where an express contract or preexisting legal relationship exists." *United Cable Television of Jeffco, Inc. v. Montgomery LC, Inc., supra*, 942 P.2d at 1233.

Here, defendant and Serna, as employer and employee, had a pre-existing legal rela-

tionship, which allowed Serna to bring her indemnity claim despite the WCA.

### B. Contribution Among Joint Tortfeasors

Serna next contends that the trial court erred in concluding that her indemnification action was barred by UCATA. We agree.

■ In dismissing Serna's indemnification claim, the trial court relied upon *Brochner v. Western Insurance Co.*, 724 P.2d 1293, 1296 (Colo.1986), in which the supreme court held that UCATA had abrogated some indemnity actions, namely those which would require "one of two joint tortfeasors to reimburse the other for the entire amount paid by the other as damages to a party injured as the result of the negligence of both joint tortfeasors." *Brochner v. Western Insurance Co., supra,* 724 P.2d at 1299.

Here, in their initial complaint against defendant and Serna, the passengers alleged that defendant was liable based *only* on a theory of respondeat superior, not negligence. Therefore, defendant and Serna were not joint tortfeasors within the meaning of UCATA, and thus, UCATA would not bar Serna's indemnity action against defendant. *See Arnold v. Colorado State Hospital,* 910 P.2d 104, 107 (Colo.App.1995); *McCall v. Roper,* 685 P.2d 230, 232 (Colo.App.1984).

### C. Common Law Indemnity

Defendant argues that, even if not barred by the WCA or UCATA, Serna's indemnity claim must nonetheless fail because there is no realistic prospect of the passengers executing on the judgment entered against her. We agree.

■ On appeal, a party may defend the judgment of the trial court on any ground supported by the record, regardless of whether that ground was relied upon or even contemplated by the trial court. *People v. Eppens,* 979 P.2d 14, 22 (Colo.1999); *see also Olsen & Brown v. City of Englewood,* 867 P.2d 96, 99 (Colo.App.1993)("A party may defend the trial court's judgment on grounds not decided by the trial court, as long as the party's rights are not increased."), *aff'd,* 889 P.2d 673 (Colo.1995).

Serna's indemnity claim is based not on contract, but on the common law duty of a principal to indemnify its agent for losses incurred by the agent while acting on the principal's behalf. *See Johnson Realty v. Bender,* 39 P.3d 1215, 1218 (Colo.App.2001).

■ "As a general rule, a cause of action for indemnity does not arise until the liability of the party seeking indemnity results in his damage, either through payment of a sum clearly owed or through the injured party's obtaining an enforceable judgment." *Perry v. Pioneer Wholesale Supply Co.,* 681 P.2d 214, 218 (Utah 1984).

In this case, Serna has not paid the judgment against her, and, under the terms of her agreement with the passengers, there is no reason to believe that she ever will. Her settlement agreement stipulated that the passengers would not "execute on any portion of the judgment exceeding the $40,000 tendered through [Serna's insurance provider] so long as [Serna] proceeds with her legal remedies" against defendant. The passengers even agreed to "pay all costs associate[d] with prosecuting Serna's claim, including any attorney's fees incurred."

■ Serna asserts that her agreement is of a type permitted under *Bashor v. Northland Insurance Co.*, 29 Colo.App. 81, 83–84, 480 P.2d 864, 866 (1970), *aff'd,* 177 Colo. 463, 494 P.2d 1292 (1972). A *Bashor* agreement is "a settlement reached between opposing parties after a judgment has been obtained," wherein the "prevailing party agrees not to execute on the judgment in exchange for the defendant's agreement not to appeal the judgment and instead to pursue claims against third parties (and share any recovery with the original plaintiff)." *Stone v. Satriana,* 41 P.3d 705, 708 n.2 (Colo.2002).

In the reported Colorado cases to date, *Bashor* agreements have been used only in cases involving allegations of a breach of an insurer's contractual duty to indemnify an insured. *See Stone v. Satriana, supra; Daugherty v. Allstate Insurance Co.,* 55 P.3d 224, 2002 WL 464801 (Colo.App. No. 01CA0130, Mar. 28, 2002); *Pike v. American States Preferred Insurance Co.,* 55 P.3d 212, 2002 WL 282494 (Colo.App. No. 00CA0400,

Feb. 28, 2002); *Bernhard v. Farmers Insurance Exchange*, 885 P.2d 265, 270–71 (Colo. App.1994), *aff'd*, 915 P.2d 1285 (Colo.1996). Further, the "shared recovery" contemplated by *Bashor* agreements encompasses only the return, on a full or pro rata basis, of the amount of money a *Bashor* defendant had already paid to the injured party. *See Bashor v. Northland Insurance Co., supra*, 29 Colo.App. at 83, 480 P.2d at 866.

Here, any duty on defendant's part to indemnify Serna arose not under contract but under common law. Further, Serna's agreement with the passengers was more akin to a profit-sharing agreement; her share of any recovery against defendant was not limited to recouping only the losses she or her insurance company sustained. Indeed, under the agreement, the passengers promised to give Serna half of any monies recovered from defendant in excess of $1 million. If, then, she were able to obtain a $1.5 million dollar judgment against defendant, she would be entitled to $250,000.

Finally, and perhaps most important, unlike the *Bashor* situation, there has never been a judgment enforceable against Serna; indeed, the only judgment against her is one to which she stipulated, along with conditions virtually ensuring her that it would never be enforced against her.

Because, under the particular circumstances of this case, we discern no danger that Serna will ever sustain a monetary loss or otherwise be subjected to an enforceable judgment against her, we affirm the trial court's dismissal of her indemnification claim against defendant. *See Midwest Commerce Banking Co. v. Elkhart City Centre*, 4 F.3d 521, 526 (7th Cir.1993)(one cannot "seek indemnity . . . without any basis for supposing that there will ever be any indemnifiable loss").

## II. Attorney Fees and Costs

Next, Serna contends that the trial court erred in awarding attorney fees and costs. We agree.

Initially, we note that the trial court awarded fees and costs not only against Serna, but also against the passengers. Because the passengers are not parties to this appeal, we have no occasion to consider or disturb the award against them.

Section 13–17–102 requires that the trial court award reasonable attorney fees and costs in any case when a party's claim lacks "substantial justification," meaning the claim is substantially frivolous, groundless, or vexatious. However, where there is a rational basis grounded in law and evidence for a party's position, the trial court's finding that the position was substantially frivolous is not sustainable. *Hart & Trinen v. Surplus Electronics Corp.*, 712 P.2d 491, 493 (Colo.App.1985).

Having concluded that Serna's indemnity claim was not barred by the WCA or UCATA, we must necessarily conclude that "substantial justification" existed for the positions she took with respect to those issues. Thus, we cannot sustain the trial court's award of attorney fees and costs against Serna.

Because we reverse that award, we need not consider defendant's cross-appeal.

Accordingly, the judgment is affirmed, except that the award of attorney fees and costs against Serna is reversed.

PLANK *, J., concurs.

TAUBMAN, J., specially concurs.

Judge TAUBMAN specially concurring.

While I agree with the majority's analysis, I write separately to express my agreement with Kingston that, as a matter of public policy, this action should be precluded because under the settlement agreement between Serna and the passengers, the passengers control all aspects of this litigation on behalf of Serna, and Serna's lawyer also represents the passengers, who are third-party defendants here.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2002.

I am troubled by a number of ethical issues presented by the settlement agreement and believe that it extends beyond what was deemed acceptable by the court of appeals and the supreme court in *Bashor v. Northland Insurance Co.,* 29 Colo.App. 81, 480 P.2d 864 (1970), *aff'd,* 177 Colo. 463, 494 P.2d 1292 (1972). The trial court was similarly troubled. In its summary judgment, it indicated that representation of different clients with different interests here was contrary to the Rules of Professional Conduct. The trial court concluded that although parties on opposite sides of a lawsuit conceivably could have common interests in a second lawsuit, such was not the case here. Indeed, the trial court stated that it was referring its opinion to "the Office of Disciplinary Counsel," now the Office of Attorney Regulation Counsel. *See* C.R.C.P. 251.1 to 251.34.

According to Kingston, "the adversarial process has been disfigured to the point that the original plaintiffs are now defendants, a settling defendant is now the plaintiff, and the attorneys representing the original plaintiffs are now representing the settling defendant acting as the new plaintiff as well as the original plaintiffs who are now defendants." Indeed, the passengers, who were plaintiffs in the first lawsuit, are now third-party defendants here. Serna, the settling defendant in the first lawsuit, is now the plaintiff here, and she is represented by the passengers' original attorney, who continues to represent the passengers as third-party defendants.

As summarized in the majority opinion, the agreement between the passengers and Serna included the following terms:

(1) Serna stipulated to an entry of a judgment against her in the amount of $1.5 million, an amount based upon the previously vacated default judgment in the first lawsuit;

(2) Serna would pursue her claims against Kingston to recover the full amount of the $1.5 million stipulated judgment against her, and the passengers would have the right to select the attorney to represent her either in the first lawsuit or in a new lawsuit;

(3) The passengers agreed to pay all of Serna's attorney fees, costs, and expenses in the additional litigation and further agreed to indemnify her from any costs or attorney fees that might be awarded against her;

(4) Serna agreed to the selection of the passengers' present attorneys to represent her;

(5) Serna agreed not to settle her lawsuit against Kingston without the consent of the passengers, and Serna further agreed to accept any settlement in this lawsuit which is approved by the passengers;

(6) Serna agreed to pursue and exhaust all legal remedies she might have against Kingston, including appeal, without an independent right to determine whether an appeal is appropriate;

(7) The passengers agreed not to execute any of the confessed $1.5 million judgment against Serna (except for $40,000 paid by her insurer), as long as she pursued the action against Kingston;

(8) In the event of settlement or judgment, the passengers would receive all sums up to $1 million, with any excess shared equally with Serna;

(9) The passengers would have sole discretion to pursue, settle, or appeal the litigation brought by Serna.

This agreement was entered into after the passengers had settled the first lawsuit against Kingston for $850,000. Initially, the passengers had obtained a default judgment in the amount of $2,350,000 against Kingston, which was vacated when the claim against Kingston was settled. Nevertheless, the difference between the default judgment, $2,350,000, and the settlement amount, $850,000, was the amount of the judgment to which Serna confessed as part of the agreement at issue here.

The parties here dispute the validity of the settlement agreement. Kingston asserts that it contains the same evils as a traditional "Mary Carter" agreement, but is even more damaging to the integrity of the judicial process. Under a Mary Carter agreement, a settling defendant typically agrees to guarantee the plaintiff a minimum payment, the plaintiff agrees not to enforce a judgment against the settling defendant, and the settling defendant's exposure is reduced in pro-

portion to any liability found against other codefendants. Often, this agreement is not revealed to the nonsettling defendant. *See Booth v. Mary Carter Paint Co.*, 202 So.2d 8 (Fla.Dist.Ct.App.1967).

The Colorado Supreme Court has expressly declined to rule on the permissibility of Mary Carter agreements. *See Copper Mountain, Inc. v. Poma of America, Inc.*, 890 P.2d 100, 108 n. 13 (Colo.1995). Nevertheless, courts in Florida, Nevada, New Mexico, Oklahoma, Texas, and Wisconsin have declared such agreements to be contrary to public policy and do not permit them. *See Dosdourian v. Carsten*, 624 So.2d 241 (Fla. 1993); *Lum v. Stinnett*, 87 Nev. 402, 488 P.2d 347 (1971); *Watson Truck & Supply Co. v. Males*, 111 N.M. 57, 801 P.2d 639 (1990); *Cox v. Kelsey–Hayes Co.*, 594 P.2d 354 (Okla. 1978); *Elbaor v. Smith*, 845 S.W.2d 240 (Tex. 1992); *Trampe v. Wisconsin Tel. Co.*, 214 Wis. 210, 252 N.W. 675 (1934).

Serna asserts that these cases are inapposite because no Mary Carter agreement is involved here, particularly because a second lawsuit was filed and the agreement was revealed to Kingston. Instead, Serna asserts that the agreement here was based upon the supreme court's opinion in *Bashor*, and therefore was proper.

Although the supreme court held the *Bashor* agreement was not illegal, void, or contrary to public policy, it did not consider whether the agreement contravened the then-existing ethical rules.

As the majority opinion notes, *Bashor* has been applied only in the context of bad faith insurance litigation. Additionally, a comparison of the circumstances in *Bashor* with those here reveals significant differences.

In *Bashor*, the injured party entered into an agreement with Bashor, whose negligence had caused a car accident. The injured party received an assignment from Bashor, thereby permitting her to sue Bashor's insurer for part of the amount of the judgment she had already obtained against Bashor. Here, in contrast, Serna was effectively prosecuting a second lawsuit on behalf of the passengers, under which the passengers stood to gain a substantial amount of money (up to $1,250,000) in addition to the $850,000 settlement they had already achieved.

Although the *Bashor* agreement provided that the injured party would select the attorney for Bashor with Bashor's consent, there is no indication that the attorney for both parties was the same. Here, however, the same attorney represented both Serna as plaintiff and the passengers as third-party defendants in the same litigation. This arrangement appears to violate Colo. RPC 1.7(a). *See* Colo. RPC 1.7 cmt. ("(a) prohibits representation of opposing parties in litigation").

Serna asserts that this arrangement is permissible because her interests coincide with those of the passengers, but that is not necessarily so. While Serna has an interest in obtaining a judgment against Kingston so that the $1.5 million judgment against her will be released, she has no interest in litigating the applicability of the settlement between the passengers and Kingston, which is disputed by those parties.

Additionally, while Bashor agreed to prosecute fully his lawsuit, including appeal, if he was unsuccessful in the trial court, here it appears that Serna was required to prosecute an appeal regardless of whether she independently believed there was a legitimate basis for pursuing an appeal. Indeed, her attorney has an irreconcilable conflict of interest, because the passengers' interest in pursuing an appeal is different from Serna's interest.

Another ethical concern is that the agreement here may run afoul of Colo. RPC 1.2(a), which provides in pertinent part that "[a] lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter." A client's right to settle a case is absolute and unqualified. Any provision in a fee agreement that would deprive a client of the right to control settlement is unenforceable as against public policy. *See Jones v. Feiger, Collison & Killmer*, 903 P.2d 27 (Colo.App.1994), *rev'd on other grounds*, 926 P.2d 1244 (Colo.1996).

Here, Serna gave her right to settle this litigation to the passengers, and the same attorney represented both them and Serna. It is not difficult to imagine a circumstance where Kingston might make a sizeable offer to settle, which Serna herself might be in-

clined to accept, but could not do so under the agreement, because either the passengers or the lawyer concluded that the proposal was insufficient.

Further, because the attorney here was proceeding under a contingent fee agreement, his interest was in achieving the highest possible settlement. Accordingly, from that perspective, he might have conflicting loyalties to the passengers and Serna.

In short, the agreement between Serna and the passengers here resulted in real or apparent conflicts of interest and possible violations of the Rules of Professional Conduct, and it allowed the passengers to seek further remuneration from Kingston after they had already fully and finally settled their initial lawsuit against it.

For these reasons, I would also affirm the trial court because the agreement between Serna and the passengers contravenes public policy.