2013 COA 128

**PREMIER MEMBERS FEDERAL CREDIT UNION, Plaintiff–Appellee,**

v.

**Henry BLOCK and South Broadway Automotive Group, Inc., d/b/a Quality Mitsubishi, Inc., Defendants–Appellees,**

and

**Darrell Einspahr, Defendant–Appellant.**

**Court of Appeals No. 12CA0906**

Colorado Court of Appeals,
Div. II.

August 29, 2013

EasonRohde, LLC, Bruce E. Rohde, Denver, Colorado, for Plaintiff–Appellee and Defendants–Appellees.

Joseph A. Peters, Denver, Colorado, for Defendant–Appellant.

Opinion by JUDGE LICHTENSTEIN

¶ 1 Defendant, Darrell Einspahr, appeals the judgment entered after a bench trial, on the fraud claim of plaintiff, Premier Members Federal Credit Union (Premier). He contends the trial court erred by denying him a jury trial. He also appeals the court's dismissal of his cross-claim that sought indemnification from Broadway Automotive Group, Inc., doing business as Quality Mitsubishi, Inc., and its owner Henry Block (collectively Quality). We affirm.

¶ 2 As an issue of first impression, we consider whether C.R.C.P. 6(b)—the civil rule governing enlargements of time—gives a court discretion to grant a party's request for a jury trial upon a showing of excusable neglect for that party's untimely payment of a jury fee. Because C.R.C.P. 6(b) does not apply to the statutory deadline for payment of jury fees, we conclude it does not.

¶ 3 We also address whether an employee who knowingly engages in fraud may have a right to indemnification from his or her employer under a theory of vicarious liability. We conclude such an employee is precluded from seeking indemnification, irrespective of any authorization by the employer.

## I. Background

¶ 4 Einspahr was the manager of the special finance department of Quality's car dealership. He and another employee in the department recommended high risk buyers for car loans from Premier. The fraud claim was based on their conduct of "power booking," in which they artificially inflated the values of vehicles (which would create a better loan to value ratio) to induce Premier to approve the car loans.

¶ 5 After Premier learned that Einspahr and the other employee had "power booked" several of its loans, it sued Einspahr, the other employee, and Quality for fraud.[1] Quality filed cross-claims against Einspahr, and Einspahr filed cross-claims against Quality.

1. The other employee was dismissed from the lawsuit.

¶ 6 Premier and Quality subsequently reached a settlement and the court "dismissed with prejudice" Premier's claims against Quality and Quality's cross-claims against Einspahr. Premier's only remaining claim—its fraud claim against Einspahr—proceeded to a bench trial. The trial court entered judgment against Einspahr and dismissed Einspahr's cross-claims against Quality.

¶ 7 This appeal followed.

## II. Jury Demand

¶ 8 Einspahr contends the trial court erred when it denied his request for a jury trial on the basis that he had failed to timely pay his jury fee. He asserts the trial court should have applied C.R.C.P. 6(b), which governs enlargements of time, and gives courts the discretion to permit an act to be performed after the expiration of a deadline upon a showing of excusable neglect. Because the jury fee deadline is governed by section 13–71–144(1)(c), C.R.S.2012, we conclude that C.R.C.P. 6(b) does not apply. Consequently, we perceive no error.

### A. Standard of Review

¶ 9 Ordinarily, we review a trial court's denial of an enlargement of time within which to perform an act for an abuse of discretion. *State Farm Fire & Cas. Co. v. Weiss,* 194 P.3d 1063, 1069 (Colo.App.2008) (citing C.R.C.P. 6(b)). However, we review the application of the rules of civil procedure de novo. *Luebke v. Luebke,* 143 P.3d 1088, 1092 (Colo.App.2006). We may affirm a trial court's ruling on any ground that is supported by the record. *Thyssenkrupp Safway, Inc. v. Hyland Hills Parks & Recreation Dist.,* 271 P.3d 587, 589 (Colo.App. 2011).

### B. Trial Court Proceedings

¶ 10 When Quality filed its answer to Premier's fraud claim and cross-claim against Einspahr, it included a general jury demand and paid the jury fee. Einspahr, who at the time was represented by an attorney, did not pay a jury fee in response to Quality's jury demand, as required by C.R.C.P. 38(c). Subsequently, Einspahr, through counsel, filed an answer and cross-claim (against Quality), which included a jury demand. Again, he did not pay the jury fee, as required by C.R.C.P. 38(b).

¶ 11 At the final pretrial conference, Quality withdrew its jury demand but Einspahr, who was now proceeding pro se, informed the court that he still sought a jury trial. He supplemented this oral request with a written motion asking the court to allow him to pay the jury fee out of time, asserting that his attorney had negligently failed to pay the fee.

¶ 12 The court issued a written order denying his request:

> Although Einspahr timely filed his jury demand ... after the [c]ourt granted him leave to file the cross-claims ... Einspahr did not pay the requisite jury fee at any time.
>
> . . .
>
> Therefore pursuant to Rule 38(b), (c) and (e), Einspahr has waived his right to a jury trial.
>
> . . .
>
> With no other party demanding trial by jury and paying a jury fee, Quality's withdrawal of its jury demand ... is effective, and the ... trial will be to the [c]ourt.

¶ 13 Einspahr filed two motions to reconsider this ruling, additionally alleging that the court staff and the e-filing system should have charged the fee upon his attorney's filing of the jury demand.

¶ 14 The trial court issued a second ruling, again denying a jury trial:

> Since defendant Einspahr ha[d] made a timely jury demand, but did not pay the jury fee as required under Rules 38(b), (c) and (e), the [c]ourt is not able to reinstate defendant Einspahr's right to a jury trial without the written authorization of the other parties in the case ....

Premier and Quality filed a response, stating that they would not authorize the reinstatement of a jury trial.[2] The case then proceeded to a bench trial.

2. Neither Rules 38 and 39, nor section 13–71–144, C.R.S.2012, contain any language indicating

### C. Applicability of C.R.C.P. 6(b)

¶ 15 Colorado Rule of Civil Procedure, Rule 6(b) provides:

When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion ... upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect ....

■ ¶ 16 Einspahr contends that the trial court should have allowed him to pay his jury fee out of time because under Rule 6(b), the court had discretion to permit an act to be performed after the expiration of a deadline upon a showing of excusable neglect, and he established excusable neglect.

¶ 17 As an initial matter, Premier contends that Einspahr did not preserve this issue because, even though he requested permission to file the jury fee out of time, he never cited Rule 6(b), much less asked the court to decide whether Rule 6(b) applied. Even assuming the substance of Einspahr's motions sufficiently identified Rule 6(b) as the basis for his request, we conclude that, under the applicable statute, the court lacked discretion to enlarge the jury fee filing deadline and hence the case properly proceeded to a bench trial.

¶ 18 Determinative here, the right to a jury trial upon the filing of a jury fee is not only governed by court rule, but also by statute.

¶ 19 Colorado Rule of Civil Procedure, Rule 38(e) states:

[t]he failure of a party to file and serve a demand for trial by jury and simultaneously pay the requisite jury fee as required by this Rule constitutes a waiver of that party's right to trial by jury.

¶ 20 And the statute governing jury fees in civil cases states:

Each party to an action who does not affirmatively waive, in writing, the right to

a trial by jury on all issues which are so triable shall pay the jury fee. Failure to pay the jury fee *at the time of filing the demand, and no later than ten days after the service of the last pleading* directed to any issue triable by a jury, shall constitute a waiver of a jury trial by the demanding, nonpaying party.

§ 13–71–144(1)(c) (emphasis added).

¶ 21 According to the rule and the statute, the failure to pay the jury fee at the time of filing of the jury demand constitutes a waiver of a jury trial. The statute additionally provides that the demanding, nonpaying party waives a jury trial if it fails to meet this requirement within "ten days after the service of the last pleading directed to any issue triable by a jury." There is no express statutory exception to the deadline, such as a claim of excusable neglect. And Einspahr does not cite, nor have we found, any authority addressing section 13–71–144(1)(c) that permits a trial court to enlarge the statutory time for demanding a jury.

¶ 22 Therefore, even if Rule 6(b) can operate to enlarge the filing deadlines established under the rules of civil procedure, the court otherwise was barred by statute from granting Einspahr's request.

■ ¶ 23 When a statute sets forth a particular deadline or procedure, "court-promulgated rules simply do not apply." *People ex rel. S.M.A.M.A.*, 172 P.3d 958, 961 (Colo.App. 2007); *see also Hernandez v. Downing*, 154 P.3d 1068, 1071 (Colo.2007) (insofar as the Colorado Rules of Civil Procedure are inconsistent or conflict with a Colorado statute, they do not govern). Indeed, "[b]y its own terms, C.R.C.P. 6(b) applies only to requests to enlarge deadlines set forth in the rules of civil procedure, a notice under those rules, or a court order. The rule does not apply to statutorily established time periods." *Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 592 (Colo.App.2007).

¶ 24 Thus, because section 13–71–144(1)(c) expressly identifies the deadline beyond which a nonpaying, demanding party waives

that upon "written authorization" one party may consent to the nonpaying party paying the jury

fee out of time.

the right to jury trial, the "excusable neglect" provision of Rule 6(b) does not apply. *See Antolovich*, 183 P.3d at 592 ("[W]hen a statute clearly provides an alternative procedure or requirements, the provisions of C.R.C.P. 6 do not apply."); *see also State Bd. of Registration for Prof'l Eng'rs & Prof'l Land Surveyors v. Brinker*, 948 P.2d 96, 99 (Colo.App.1997) ("[W]hen a statute specifically establishes that the filing period begins at the time of mailing and provides that it ends a certain number of days later, the three day 'mailing window' of C.R.C.P. 6(e) does not apply.").

¶ 25 Therefore, we affirm the trial court's order denying Einspahr a jury trial.

### III. Cross-claim for Indemnification

¶ 26 Einspahr also contends that, following the bench trial, the court erroneously dismissed his cross-claim for indemnification against Quality, despite finding that Quality was vicariously liable for Einspahr's fraudulent "power booking." We conclude the dismissal was appropriate.

### A. Standard of Review

¶ 27 We review a judgment following a bench trial as a mixed question of fact and law. *Lawry v. Palm*, 192 P.3d 550, 558 (Colo.App.2008). We defer to the court's findings of fact unless they are clearly erroneous, and we review the court's conclusions of law de novo. *Id.*

### B. Analysis

¶ 28 Einspahr asserted in his cross-claim against Quality that it had a common law duty to indemnify him for damages he owed to Premier because Quality was vicariously liable for his tortious conduct. The trial court agreed that Quality was vicariously liable for Einspahr's fraudulent "power booking," but rejected Einspahr's asserted right to indemnity.

¶ 29 The trial court concluded either that (1) Einspahr was precluded from seeking indemnity if, as he alleged, Quality also defrauded Premier, or (2) Einspahr, as a tortfeasor, could not seek indemnification from his vicariously liable, but innocent employer. It stated that "[u]nder Colorado law ..., a negligent employee has no right of indemnification from the innocent, albeit vicariously liable employer."

¶ 30 Einspahr only challenges this latter conclusion on appeal. He contends that it is not supported by Colorado law or Restatement authorities, and argues that according to these authorities, an employee found liable for negligence, or even an intentional tort, may seek indemnification from his or her vicariously liable employer, when that employer has authorized the tortious conduct. However, our analysis of the pertinent Colorado and Restatement provisions shows Einspahr is not entitled to the relief he seeks. As explained below, we conclude that an employee-tortfeasor is barred from seeking indemnification from his vicariously liable employer when, as here, that employee knew he was engaging in wrongful conduct.

¶ 31 A common law duty to indemnify may arise from a pre-existing legal relationship. *Johnson Realty v. Bender*, 39 P.3d 1215, 1218 (Colo.App.2001). An employee's right to indemnification from an employer is based on agency principles. The general rule is that an agent is entitled to indemnification from the principal for losses incurred in performance of the agency that, because of the parties' relationship, should fairly be borne by the principal. *See id.* (citing Restatement (Second) of Agency § 438(2)(b) (1958)).

¶ 32 In Colorado, at least until the adoption of the Uniform Contribution Among Tortfeasor's Act (UCATA), an employee could seek indemnification from his or her vicariously liable employer if the employer authorized or participated in the employee's tortious act. *See Frick v. Abell*, 198 Colo. 508, 514, 602 P.2d 852, 856 (Colo.1979) (an employer would be required to indemnify his servant under the doctrine of respondeat superior if he participated in, authorized, or approved his servant's tortious act; or failed to exercise proper care in the selection of his servant).

¶ 33 Significantly, in 1986, our supreme court in *Brochner v. Western Insurance Co.*, 724 P.2d 1293, 1299 (Colo.1986),

abolished the common law doctrine of indemnity as between two joint tortfeasors, in light of UCATA's adoption of the principle of contribution among joint tortfeasors. Consequently, one of two joint tortfeasors can no longer maintain an indemnity claim against the other for reimbursement of the entire amount paid as damages to the injured party. *Id.*

¶ 34 Thus, if an employee and employer are joint participants in tortious conduct, one cannot seek indemnity from the other. *See id.* The *Brochner* court expressly reserved the question whether the common law doctrine of indemnity should be preserved or abolished in situations where the party *seeking* indemnity is vicariously liable or is without fault. *Id.* at 1298 n. 6.

¶ 35 In *Serna v. Kingston Enterprises*, 72 P.3d 376 (Colo.App.2002), a division of this court distinguished *Brochner*, in the context of an employee seeking indemnification from her employer for her negligent driving. The division held that UCATA did not bar an employee's indemnity action against her employer because plaintiffs alleged the employer was only liable for its employee's negligent driving on a theory of vicarious liability, and not for its own negligence (the employer directed the fifteen-year-old employee to drive from one franchise to another). Thus, the employee and employer were not joint tortfeasors within the meaning of UCATA. *Id.* at 380.

¶ 36 Relying on *Serna*, Einspahr contends that he has a viable common law indemnity claim because, like the employee in *Serna*, his claim is based on the "common law duty of a principal to indemnify its agent for losses incurred by the agent while acting on the principal's behalf." *See id.* And like the employer in *Serna*, Quality was not a joint tortfeasor,[3] but directed or authorized him to engage in the "power booking."

¶ 37 And similarly, relying on the Restatement (Second) of Agency, Einspahr asserts that an agent may seek indemnity for "pay-ments of damages to third persons which he is required to make on account of the authorized performance of an act which constitutes a tort or breach of contract." Restatement (Second) of Agency § 439(c) (1958).

¶ 38 Colorado courts have relied on the Restatement (Second) of Agency sections 438 and 439 in addressing the duty of indemnification. *See Johnson*, 39 P.3d at 1218 (Restatement (Second) of Agency § 438); *Equitex, Inc. v. Ungar*, 60 P.3d 746, 751 (Colo. App.2002) (Restatement (Second) of Agency § 439). Our examination of these Restatement provisions leads us to conclude that a tortfeasor-agent's right to indemnity from a principal is limited to circumstances where indemnity is not barred by the agent's knowledge that he or she is engaging in a wrongful act. Under the Restatement's rule, if "the agent, at the direction of the principal, commits an act which constitutes a tort but which the agent believes not to be tortious, he is entitled to indemnity ...." Restatement (Second) of Agency § 439 cmt. g.

¶ 39 Thus, "if an innocent agent sells goods and thereby becomes liable to the true owner in conversion or to the vendee for an authorized misrepresentation, the principal is subject to liability to him." *Id.* Indeed, "[t]his right [to indemnity] exists, for instance, where the principal has directed an innocent agent to do an act which is tortious ...." Restatement (Second) of Agency § 438 cmt. b.

¶ 40 In contrast, "[a]n agent knowingly committing an illegal act ordinarily has no right to indemnity from the principal, although the principal has directed him to commit it ...." Restatement (Second) of Agency § 439 cmt. g; *see also* Restatement (Third) of Agency § 8.14 cmt. b (2006) ("A principal's duty to indemnify does not extend to losses that result from the agent's own negligence, illegal acts, or other wrongful conduct.").

¶ 41 This limitation is consistent with Colorado law. *See, e.g., Equitex*, 60 P.3d at 750 ("Public policy prohibits 'indemnifying a par-

---

**3.** Although the record shows that Premier alleged that Quality independently committed fraud, and the parties subsequently settled that claim, the trial court expressly stated that it was *not* finding that Quality defrauded Premier. Because we conclude the claim is barred on separate grounds, we need not address whether Quality was a joint tortfeasor.

ty for damages resulting from intentional or willful wrongful acts.'" (quoting *Bohrer v. Church Mut. Ins. Co.,* 12 P.3d 854, 856 (Colo. App.2000))).

¶ 42 Here, the trial court found that Einspahr intentionally added vehicle options on the book-out forms which were not actually on the vehicles, that he knew these "power booked" values on the book-out forms were false, and that he intended that Premier rely on the false vehicle values on the book-out forms so that Premier would accept the loans and he would be paid commissions. Based on the court's findings that Einspahr knew that he was engaging in a wrongful act, Einspahr was not an "innocent agent." Accordingly, he has no right to seek indemnification from Quality. *See* Restatement (Second) of Agency § 439 cmt. g; *see also Equitex,* 60 P.3d at 750 (jury's finding that an attorney for a corporation acted wrongfully and intentionally precludes an indemnity remedy under either a contract or promissory estoppel theory).

¶ 43 Accordingly, albeit on grounds different from those relied upon by the trial court, *see Thyssenkrupp Safway,* 271 P.3d at 589, we affirm the dismissal of Einspahr's indemnity claim.

## IV.   Fees and Costs

¶ 44 Because we do not view Einspahr's appeal as frivolous under C.A.R. 38(d) and section 13–17–102(4), C.R.S.2012, we deny Premier's and Quality's requests for appellate fees and double costs. *See In re Marriage of Davis,* 252 P.3d 530, 538 (Colo.App. 2011).

## V.   Conclusion

¶ 45 The judgment is affirmed.

JUDGE CASEBOLT and JUDGE DUNN concur.