23CA2159 Aryee v State of Colorado 10-31-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA2159
Adams County District Court No. 21CV30229
Honorable Roberto Ramírez, Judge

---

Isaac Aryee,

Petitioner-Appellant,

v.

State of Colorado,

Respondent-Appellee.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE SCHUTZ
Pawar, J., concurs
Tow, J., specially concurs

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 31, 2024

---

Issac Aryee, Pro Se

Philip J. Weiser, Attorney General, Melissa D. Allen, Senior Assistant Attorney General, Jennifer H. Hunt, Senior Assistant Attorney General, Denver, Colorado, for Respondent-Appellee

¶ 1    Isaac Aryee appeals the district court's order granting summary judgment in the State's favor on Aryee's civil claim under Colorado's Exoneration Act (the Act), sections 13-65-101 to -103, C.R.S. 2024. Aryee brought his claim after his criminal conviction and prison sentence for sexually assaulting a juvenile, K.W., were set aside based on allegedly newly discovered evidence and later dismissed based on the prosecution's motion. We affirm the judgment.

## I.    Factual Background[1] and Procedural History

### A.    Arrest, Conviction, and Initial Appeal

¶ 2    K.W. was born in a refugee camp in a war-torn Sierra Leone.[2] Due to the ongoing conflict and resulting civil unrest, K.W. was not born in a hospital, and no birth certificate was issued to document her birth. S.W., K.W.'s maternal aunt and adoptive mother, testified that she was present at K.W.'s birth and that K.W. was

---

[1] The stated facts are drawn from the facts established in the State's motion for summary judgment and the transcripts of Aryee's criminal trial. *See* § 13-65-102(5)(f)(II), C.R.S. 2024 (In assessing a petition under the Act, the court "shall use any transcripts . . . involving the case that is the subject of the petition.").

[2] We refer to the parties' nation of origin rather than using generalized terms like "West African" or "African" for clarity's sake and out of respect.

born in 1993. After K.W.'s parents died or could not be located,[3] S.W. and her husband at the time, F.W., adopted her. F.W. testified that in 1997, when he first met K.W., she looked and acted like a four-year-old.

¶ 3    In 2004, K.W. immigrated with her family to Colorado to escape the ongoing unrest. Her immigration documents listed her birth year as 1993. Her parents enrolled her in middle school in 2005.

¶ 4    In 2008, K.W. and her family were congregants at a church that Aryee ran out of his home. Aryee was the church's pastor. He hired K.W. to babysit his children on the weekends and began having sex with her shortly thereafter. K.W. claimed that Aryee forcibly assaulted her several times, while Aryee claimed that the relationship was consensual. In 2009, K.W. learned that she was pregnant.

¶ 5    Aryee was arrested and interviewed by a detective. He was subsequently charged with one count of aggravated sexual assault

---

[3] K.W.'s biological mother died shortly after childbirth. S.W. testified that K.W.'s biological father died soon after the mother's death, although there is conflicting information about his whereabouts and his death was not confirmed.

on a child and four counts of sexual assault on a child by a person in a position of trust. The prosecution's theory of the case was that, at the time of the assaults, Aryee — whose age was undisputed — was forty-four, and K.W. was fifteen. K.W.'s age was the central disputed issue at trial.

¶ 6     When interviewed incident to his arrest, Aryee stated that he believed that K.W. was fifteen years old when the assaults started, and he could be the father of K.W.'s baby. Aryee, a Ghanian immigrant, claimed that he did not believe K.W.'s age was an issue because in his culture a "girl of [fifteen] is not anything bad," and he also claims that S.W. gave him permission to be with K.W.

¶ 7     A DNA test confirmed that Aryee is the biological father of the child and was admitted into evidence at the criminal trial. The doctor who treated K.W. during her pregnancy testified that K.W.'s demeanor and behavior was consistent with a girl who was sixteen years old or "a little younger." In 2011, following a jury trial, Aryee was convicted as charged. The trial court sentenced him to an indeterminate term of thirty years to life in the custody of the Department of Corrections (DOC).

¶ 8     Aryee directly appealed his conviction, and a division of this court affirmed the judgment after finding that there was sufficient evidence for a jury to conclude that K.W. was less than eighteen years old when the abuse occurred. *People v. Aryee*, 2014 COA 94, ¶ 34.

B.     Birth Certificate Investigation and Vacated Judgment

¶ 9     In 2018, Aryee worked with his family members to retain the services of David Kpobi, a Ghanaian attorney, and Sia Lucy Ngaujah, a Sierra Leonean investigator, to locate K.W.'s birth records. After Aryee or his agents paid Kpobi $8,000, Ngaujah, produced a purported birth certificate that listed K.W.'s birth year as 1989, which would have made her nineteen at the time of the assaults.

¶ 10    In January 2019, Aryee's counsel filed a motion for a new trial in the criminal case based on the newly obtained birth certificate. In June 2019, after an evidentiary hearing, the district court vacated Aryee's conviction and granted his motion for a new trial after finding that the birth certificate would likely be admitted at a new trial, had the potential to produce an acquittal, and

significantly undermined the prosecution's evidence related to K.W.'s age.

¶ 11 In July 2020, the prosecution moved to dismiss Aryee's charges without prejudice citing difficulties in obtaining evidence due to the COVID-19 pandemic, losing touch with critical witnesses, and difficulties obtaining information from Sierra Leonean officials.

C. Exoneration Petition and Subsequent Procedural History

¶ 12 In February 2021, Aryee filed a petition pursuant to the Act asserting that the alleged birth certificate proved that he was actually innocent of the crimes for which he was convicted. Aryee requested relief in the form of (1) compensation for the nine years he spent in DOC custody; (2) expungement of his criminal record; or, in the alternative, (3) a jury trial on the petition's merits. *See* §§ 13-65-101 to -103.

¶ 13 The State responded that Aryee was not entitled to compensation under the Act because he failed to prove his actual innocence. In furtherance of its defense, the State retained the services of Tamba Kellie, a Sierra Leonean attorney, to investigate the birth certificate's authenticity. Kellie specialized in Sierra Leone

5

law as it relates to birth registrations, particularly for children whose birth was not documented at the time of their birth due to civil unrest.

¶ 14 The district court set the matter for a jury trial in September 2023. Aryee's counsel moved to withdraw from the case. On June 26, 2023, the State filed a motion for summary judgment. Aryee's response was due on July 17, 2023. On August 24, the district court held a trial management conference to discuss the upcoming trial. Aryee, who appeared pro se, asked the court for additional time to retain counsel. The court gave him until September 1 for counsel to file a notice of appearance. The court advised the parties that if counsel failed to a file notice of appearance by September 1, the court would proceed on the assumption that Aryee remained pro se.

¶ 15 On September 5, an attorney filed a limited entry of appearance and requested additional time to review Aryee's file. The district court gave the attorney until noon on September 7 to advise the court whether they would represent Aryee. The court indicated that if counsel confirmed the representation by noon on the seventh, it would also afford counsel an extension, until

September 14, to file a response to the State's motion for summary judgment.

¶ 16    On September 7, after counsel failed to meet the deadline for confirming their appearance, the district court granted the State's summary judgment motion and vacated the trial after finding that:

- The birth certificate did not meet any standard for authenticity or admissibility under the Colorado Rules of Evidence.

- Because the birth certificate provided the sole basis for Aryee's contention that K.W. was not a child at the time of the sexual assault, there was no issue of material fact as to whether Aryee was actually innocent of the sexual assault charges.

- And because Aryee offered no new evidence other than the birth certificate, summary judgment in favor of the State was appropriate.

¶ 17    Aryee filed a motion for post-trial relief in which he asked the district court to reconsider its findings related to the admissibility of the birth certificate.  In that motion, Aryee asserted various

arguments in response to the motion for summary judgment. The district court denied his motion.

¶ 18    On appeal, Aryee argues that the district court erred as a matter of law by (1) failing to consider the Act's constitutionality; (2) failing to apply the doctrine of issue or claim preclusion to bar the admission of the birth certificate; (3) concluding that the birth certificate was not admissible; and (4) denying his motion under C.R.C.P. 59(d)(4). We address these contentions in turn.

## II.    Preservation of the Claims

¶ 19    As previously noted, Aryee did not file a timely response to the State's motion for summary judgment. As a general rule, C.R.C.P. 121, section 1-15(3), provides that "failure of a responding party to file a responsive brief may be considered a confession of the motion." But these general rules do not apply to motions for summary judgment. *Id.* Rather, in the summary judgment context, a court must satisfy itself that granting a motion for summary judgment is warranted under the controlling law and the undisputed facts as set forth in the motion and supporting affidavits, exhibits, and depositions. *S. Cross Ranches, LLC v. JBC Agric. Mgmt., LLC*, 2019 COA 58, ¶ 16. But "[a]n affirmative

showing of specific facts, uncontradicted by any counter affidavits, leaves a trial court with no alternative but to conclude that no genuine issue of material fact exists." *Id.* (quoting *Civ. Serv. Comm'n v. Pinder*, 812 P.2d 645, 649 (Colo. 1991)).

¶ 20    Recognizing these principles, the district court conducted a full review of the legal arguments that Aryee now raises on appeal in its rulings on the motion for summary judgment and the motion for reconsideration. Because the issues were decided by the district court, they are preserved, and we may address them. *See Battle N., LLC v. Sensible Hous. Co.*, 2015 COA 83, ¶ 13.

### III.    Due Process Claim

¶ 21    Aryee argues that the Act's requirement of proving actual innocence violates his rights under the Due Process Clause. Not so.

### A.    Standard of Review and Applicable Law

¶ 22    We review a statute's constitutionality de novo. *People v. Graves*, 2016 CO 15, ¶ 9. Statutes are presumed to be constitutional, and the burden is on the moving party to prove the statute's unconstitutionality beyond a reasonable doubt. *Id.*

¶ 23    Petitioners seeking monetary compensation under the Act must show by clear and convincing evidence that they are actually

innocent of the offense(s) for which they were convicted and entitled to compensation under the Act. § 13-65-102(1)(a), C.R.S. 2024; § 13-65-101(1) (defining the burden and required proof to establish actual innocence).

¶ 24    The United States Supreme Court held in *Nelson v. Colorado* that it violates due process to require a defendant, after their criminal conviction was reversed or vacated, to prove he was actually innocent of the criminal charge that formed the basis of the restitution award. 581 U.S.128, 138-39 (2017). The Court reasoned that the petitioner's interest in recovering restitution was substantial, but the State's interest in retaining the funds was low. *Id.* The Court also rejected the State's argument that because the Act provides a remedy against the State for defendants who prove by clear and convincing evidence that they are actually innocent of a crime, the Act and its standard of proof should be applied to claims for the return of restitution. Instead, the Court held that the State may not impose "anything more than minimal procedures on the *refund* of exactions dependent upon a conviction [that is] subsequently invalidated." *Id.* (emphasis added).

## B. Application

¶ 25    Aryee contends that *Nelson*'s holding applies to his claim for compensation under the Act, and therefore, the district court reversibly erred by requiring him to prove his actual innocence by clear and convincing evidence.

¶ 26    Aryee misunderstands *Nelson*'s scope. Its reasoning is limited to claims for the return of restitution, costs, or fees assessed based on a criminal conviction. But Aryee is not seeking reimbursement of restitution, costs, or fees. Rather, he is claiming compensation from the State for what he contends was a wrongful conviction. We decline to extend the reasoning of *Nelson* to apply to those seeking an award of compensation under the Act. *See* § 13-65-103(3).

¶ 27    Aside from the *Nelson* decision, Aryee provides no other authority to justify his claim that the clear and convincing standard of the Act is unconstitutional. Thus, we reject his constitutional argument.

## IV. Issue and Claim Preclusion

¶ 28    Aryee contends that the district court erred by refusing to consider K.W.'s purported birth certificate as evidence because a prior court had already addressed its admissibility. Thus, he

argues, the district court was precluded from reconsidering the admissibility of the birth certificate based on the doctrines of claim or issue preclusion.[4]  Again, we are not persuaded.

### A.     Standard of Review and Applicable Law

¶ 29     Whether claim preclusion or issue preclusion applies presents questions of law that we review de novo.  *Madalena v. Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 64; *Villas at Highland Park Homeowners Ass'n v. Villas at Highland Park, LLC*, 2017 CO 53, ¶ 26.

¶ 30     Claim preclusion and issue preclusion are equitable doctrines that are designed to promote judicial efficiency.  Claim preclusion prevents a party from perpetually relitigating the same claim for relief.  *Foster v. Plock*, 2017 CO 39, ¶ 12.  Claim preclusion applies if (1) the judgment in the prior proceeding is final; (2) the prior and current proceeding involved identical subject matter; (3) the prior and current proceedings involved identical claims for relief; and

---

[4] Although Aryee frames his argument under the doctrine of collateral estoppel, we defer to the Colorado Supreme Court's preferred terminology and will use the terms "issue preclusion" and "claim preclusion" for clarity's sake.  *Argus Real Est., Inc. v. E-470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo. 2005) (noting that the use of the terms "res judicata" and "collateral estoppel" can cause confusion because "res judicata" was once commonly used to refer to both claim and issue preclusion).

12

(4) the parties to the two proceedings were identical or in privity with one another. *Id.*

¶ 31 Though grounded in similar principles, issue preclusion is distinct from claim preclusion because it prevents the relitigation of an issue, rather than a claim for relief. *Id.* at ¶ 13. The elements of issue preclusion are as follows:

> (1) the issue sought to be precluded is identical to an issue actually determined in the prior proceeding; (2) the party against whom estoppel is asserted has been a party to or is in privity with a party to the prior proceeding; (3) there is a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.

*Sunny Acres Villa, Inc. v. Cooper*, 25 P.3d 44, 47 (Colo. 2001).

## B. Application

¶ 32 Aryee interchangeably asserts the district court erred by failing to consider the birth certificate because claim and issue preclusion barred the court from making findings about its admissibility. Aryee's argument is premised on the notion that the postconviction court fully resolved the issue of the birth certificate's

13

admissibility through its final orders granting his motion for a new trial and subsequently dismissing the criminal proceedings. But Aryee misunderstands the scope of the district court's orders.

¶ 33    First, the court in the postconviction case did not finally determine the admissibility of the birth certificate in either of its orders. Rather, in its order granting a new trial, the court stated that "the birth certificate will likely be admitted at the new trial," and questions of fact related to the birth certificate's origin were "questions of fact for a jury to consider." This was not a final ruling on the issue presented here: whether the birth certificate would be actually admissible at trial. Thus, Aryee does not meet the first requirement of issue preclusion.

¶ 34    Relatedly, Aryee cannot prove that the court entered a final judgment on the merits of whether the birth certificate was admissible or that he was actually innocent. Rather, the court limited its ruling to whether a new trial was warranted based on a conclusion that the birth certificate was likely to be admitted at a new trial. Nor does the order dismissing the criminal charges constitute a final adjudication of the birth certificate's admissibility or a decision on the merits of the sexual assault charges. Indeed,

14

the dismissal of the charges was without prejudice, following an order of nolle prosequi, which "is not the final disposition of a criminal case, but leaves the matter in the same condition as before the charges were filed." *People v. Small*, 631 P.2d 148, 154-55 (Colo. 1981). And because sex assault on a child has no statute of limitations, *see* § 16-5-401(1)(a), C.R.S. 2024, the charges could be refiled at some point in the future. Thus, Aryee fails to meet the third element of issue preclusion and the first and third elements of claim preclusion.

## V.    The Birth Certificate's Admissibility

¶ 35    Aryee contends that the district court erred by granting the State's summary judgment motion because concerns over the birth certificate's authenticity presented a genuine issue of material fact that must be resolved by the fact finder after the benefit of a trial.

### A.    Additional Facts

¶ 36    As discussed, in 2022, Kellie conducted a thorough investigation into the authenticity of the purported birth certificate. Kellie was a practicing attorney and partner at a law firm located in Sierra Leone. He was familiar with Sierra Leone's laws as it relates to birth registrations. In support of the State's motion for summary

15

judgment, he signed an affidavit concluding that K.W.'s birth certificate did not comport with Sierra Leone law and was likely fraudulent. He noted several parts of the birth certificate were at odds with Sierra Leone's "Births and Deaths Registration Act [of] 1983" (1983 Registration Act) (Act No.11/1983), and the "National Civil Registration Act [of] 2016" (2016 Registration Act) (Act No. 14/2016), which govern birth certificates that are filed more than a year after a person's birth.

¶ 37 Due to the ongoing unrest in Sierra Leone, birth certificates generally did not exist for Sierra Leonean's born before January 18, 2002. If a party cannot locate a parent of the child and the birth allegedly occurred more than twelve months prior, the requesting party is required to appear in person at the Office of the Authority, provide a registration officer the particular facts surrounding the child's birth, and sign the Register of Births in the presence of a registration officer. 2016 Registration Act § 45(2).

¶ 38 During his investigation, Kellie learned that an informant must provide a registration officer with the factual circumstances surrounding the child's birth with the information necessary to complete a "Live Birth Record" (LBR). The informant must sign the

LBR and provide their contact information. After the informant provides the necessary information, the Chief Registrar must verify the LBR. And the Births and Deaths Department then issues a birth certificate based on the information provided in the LBR.

¶ 39 Kellie travelled to K.W.'s birthplace, Koidu Town, and also spoke to the Deputy Director of Birth and Deaths at the Central Registry in Freetown, the city the registry is located, about K.W.'s purported birth certificate.

¶ 40 On the LBR, the informant who provided the factual information surrounding K.W.'s birth left the contact information section blank and did not sign it.

¶ 41 Kellie also noted that in addition to not providing her contact information, as is required by the 2016 Registration Act, the informant failed to provide proof of K.W.'s birth, explain the capacity in which she knew information about K.W., and spell K.W.'s name the same way it appeared on the purported birth certificate.

¶ 42 When Kellie attempted to reach out to Ngaujah, the Sierra Leonean investigator retained by Aryee's Ghanian counsel, about the birth certificate, Kellie realized that the address that Ngaujah

provided on the "Affidavit of Attestation" that she submitted with the purported birth certificate had no street address. When Kellie travelled to the neighborhood, no one recognized Ngaujah's name. In addition, the signature of the competent authorities on the birth certificate, who would verify the birth certificate's validity, was illegible, and no one from the U.S. Consulate in Sierra Leone could certify the birth records either.

¶ 43 After noting these defects, Kellie opined that "the alleged birth certificate [wa]s fraudulent." He also stated that the LBR "did not meet the requirements under Sierra Leone law." Finally, he opined that "[t]he birth certificate obtained purporting to be that of [K.W.] [wa]s not authentic."

¶ 44 In addition to identifying the defects in the purported birth certificate, the State deposed Aryee's counsel, who represented Aryee in both the postconviction and initial civil proceedings. The attorney testified that neither he nor Aryee had direct contact with Ngaujah about the birth certificate or supporting documentation. Moreover, Aryee's attorney could not explain the defects on the birth certificate, nor could he investigate the alleged defects because it was "outside of his area" to do so.

¶ 45    Based on this evidence the State argued that there were no genuine issues of material fact as to whether Aryee could prove that he was actually innocent under the Act because the purported birth record was not admissible under the Colorado Rules of Evidence and was likely a complete fabrication.

¶ 46    Although viewing the evidence tendered in support of the motion for summary judgment in the light most favorable to Aryee, the district court concluded that the alleged birth certificate was not admissible, and the State was entitled to judgment as a matter of law.  The court reasoned as follows:

- Under the Act, to be entitled to compensation, Aryee must prove actual innocence.  Because the evidence admitted at Aryee's criminal trial established beyond a reasonable doubt that he engaged in sexual intercourse with K.W., the only potential issue of fact was whether K.W. was underage at the time of the sexual contact.

- Aryee's entire claim of actual innocence was dependent on the validity of the birth certificate.  Thus, if the birth certificate was not admissible as evidence, Aryee's claim under the Act was subject to summary dismissal.

19

- No one from the U.S. consulate in Sierra Leone had certified the birth certificate.

- The certificate failed to comport with Sierra Leone law under the 1983 Registration Act or the 2016 Registration Act.

- Aryee could not independently testify as to the validity of the birth certificate because his testimony would be inadmissible hearsay.

- The alleged birth certificate could not be deemed self-authenticating under CRE 902(3) because there was no final certification of the birth certificate, and the birth certificate did not comport with Sierra Leone law.

- Because the live birth record could not be authenticated and the contents thereof were inadmissible hearsay, the substance of the alleged birth certificate could not be presented to the jury.

- Because Aryee failed to provide any new admissible evidence concerning K.W.'s age, there was no material fact disputed, and the State was entitled to judgment as a matter of law.

## B. Standard of Review and Applicable Law

¶ 47    We review a court's grant of summary judgment de novo. *Ryser v. Shelter Mut. Ins. Co.*, 2021 CO 11, ¶ 13.  Summary judgment is only appropriate if there is no dispute regarding the facts material to the claims or applicable defenses.  *Serna v. Kingston Enters.*, 72 P.3d 376, 378 (Colo. App. 2002); C.R.C.P. 56(h) ("At any time after the last required pleading . . . a party may move for determination of a question of law.").  If there is no genuine issue of any material fact necessary for the determination of the question of law, the court may enter an order deciding the question. *Serna*, 72 P.3d at 378; C.R.C.P. 56(h).

### 1. Exoneration Statute

¶ 48    To qualify for compensation under the Act, a petitioner must prove that they (1) meet the Act's definition of actual innocence; and (2) they are not ineligible for compensation for various enumerated reasons — for instance, because the petitioner committed perjury or pleaded guilty in the case at issue to avoid prosecution in another case.  *Coyle v. State*, 2021 COA 54, ¶ 14.

¶ 49    As discussed earlier, a petitioner has the burden to prove actual innocence by clear and convincing evidence that they are

"actually innocent of a crime such that: (I) [their] conviction was the result of a miscarriage of justice; [or] (II) [they] presented reliable evidence that [they are] factually innocent of any participation in the crime at issue." § 13-65-101(1)(a)(I)-(II). Furthermore, to be entitled to compensation the petitioner must show that they committed "neither the act or offense that served as the basis for the conviction and incarceration that is the subject of the petition, nor any lesser included offense thereof." § 13-65-102(3)(a).

### 2. Admissibility of Evidence

¶ 50 For a foreign document, such as the purported birth certificate, to be self-authenticating it needs to comport with CRE 902(3) which provides as follows:

> A document purporting to be executed or attested in his official capacity by a person authorized by the laws of a foreign country to make the execution or attestation, and accompanied by a final certification as to the genuineness of signature and official position (A) of the executing or attesting person, or (B) of any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to the execution or attestation. A final certification may be made by a secretary of embassy or legation, consul general, consul, vice consul,

22

or consular agent of the United States, or a diplomatic or consular official of the foreign country assigned or accredited to the United States. If reasonable opportunity has been given to all parties to investigate the authenticity and accuracy of official documents, the court may, for good cause shown, order that they be treated as presumptively authentic without final certification or permit them to be evidenced by an attested summary with or without final certification.

¶ 51 If the foreign document cannot be self-authenticated, it may still be admissible under CRE 901 if the proponent establishes that the evidence "in question is what its proponent claims." CRE 901(a); *People v. Abad*, 2021 COA 6, ¶ 15. The burden to authenticate evidence is not high, and only a prima facie showing is required. *People v. Glover*, 2015 COA 16, ¶ 13.

¶ 52 Even if a proponent can authenticate the foreign document, it is not admissible if it is precluded by the hearsay rules. Hearsay evidence is a "statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). Hearsay is not admissible unless it fits into an applicable exception or exemption. *See* CRE 802-804.

## C. Application

¶ 53 Aryee contends that the district court erred by failing to consider the birth certificate because there are disputed issues of fact related to whether the birth certificate is authentic and admissible. The State disagrees.

¶ 54 Recall that, for the birth certificate to be valid, the informant would have needed to complete an LBR. But the LBR was unsigned, contained no contact information for the informant, and spelled K.W.'s name differently than what was on the birth certificate. Additionally, the signatures on K.W.'s purported birth certificate were illegible, and when Kellie attempted to confer with the birth certificate's affiants, he was unable to reach them.

¶ 55 Based on the information, Kellie opined that the birth certificate was "fraudulent," "not authentic," and "not legitimate." These opinions were not rebutted, and the district court did not error by crediting them and concluding that the birth certificate was not self-authenticating. *See* CRE 902(3).

¶ 56 Moreover, even if authentic, the birth certificate and LBR contain hearsay and could not be admitted unless they met one of the applicable hearsay exceptions.

¶ 57    For instance, these documents would not be admissible under CRE 803(8) because they lack trustworthiness. *See* CRE 803(8) (Certain public records or reports are admissible immaterial of whether they are hearsay "[u]nless the sources of information or other circumstances indicate [a] lack of trustworthiness."). For the same reasons, the documents do not fall within the residual hearsay exception because that too requires "circumstantial guarantees of trustworthiness." CRE 807.

¶ 58    Nor are the documents admissible under the records of vital statistics exception, which exempts records or data compilations, "in any form, of births . . . if the report thereof was made to a public office pursuant to requirements of law." CRE 803(9). The noted deficiencies in the LBR and birth certificate are clearly at odds with the controlling Sierra Leone laws.

## VI.    Motion to Reconsider

¶ 59    In his post-trial motion, Aryee argues that his failure to timely file a response resulted from excusable neglect and that he had viable legal arguments to contest the motion for summary judgment. The district court disagreed on both counts. We discern no error in the district court's ruling.

## A. Additional Facts

¶ 60    On September 21, 2023, roughly two weeks after the district court granted the State's summary judgment motion, and just over two and half months after the deadline for Aryee to respond to the State's motion, Aryee moved for a new trial pursuant to C.R.C.P. 59(d)(4).[5]

¶ 61    Aryee argued that his failure to respond was because he "mistakenly, but reasonably believed that he would have time to argue why the [State's] Motion for summary judgment was in error." He also claimed to be surprised by the court's "quick turnaround" in granting the motion for summary judgment immediately after his contemplated counsel failed to confirm their representation of Aryee in accordance with the prior order.  Finally, Aryee argues his delay in responding was excusable because he struggled to obtain counsel.

¶ 62    The district court treated Aryee's motion as a request for reconsideration and noted that, in addition to demonstrating

---

[5] Aryee raised his claim under C.R.C.P. 59, which governs motions for post-trial relief; however, because the second trial never took place, it is more appropriate to analyze his claim under C.R.C.P. 60, which addresses relief from a final judgment or order.

26

excusable neglect, Aryee needed to "allege a manifest error of fact or law that clearly mandates a different result or other circumstance resulting in manifest injustice." C.R.C.P. 121, § 1-15(1).

¶ 63 Applying this framework, the district court denied his motion after finding that Aryee failed to produce newly discovered evidence that could not have been discovered and produced while timely responding to the State's motion. The court also determined that Aryee failed to demonstrate excusable neglect. We conclude the latter finding is supported and dispositive.

### B. Standard of Review and Applicable Law

¶ 64 A party may seek relief from a final judgment upon a showing of mistake, inadvertence, surprise, excusable neglect, or any other reason justifying relief from the operation of the judgment. C.R.C.P. 60(b)(1), (5). We review a district court's denial of a Rule 60(b)(1) motion for an abuse of discretion. *Harriman v. Cabela's Inc.*, 2016 COA 43, ¶ 19. A court abuses its discretion when its ruling was manifestly arbitrary, unreasonable, or unfair or was based on a misunderstanding or misapplication of the law. *Bd. of Cnty. Comm'rs v. DPG Farms, LLC*, 2017 COA 83, ¶ 34.

¶ 65 Generally, "excusable neglect involves unforeseen circumstances which would cause a reasonably prudent person to overlook a required act in the performance of some responsibility. Failure to act because of carelessness and negligence is not excusable neglect." *Colo. Dep't of Pub. Health & Env't v. Caulk*, 969 P.2d 804, 809 (Colo. App. 1998). And pro se litigants who present their own cases must also be prepared to accept the consequences of their mistakes and errors. *Manka v. Martin*, 614 P.2d 875, 880 (Colo. 1980).

## C. Application

¶ 66 We discern no error in the district court's finding that Aryee's failure to timely respond or retain counsel did not result from excusable neglect. The district court noted that Aryee was aware of the deadline to file a response to the State's summary judgment motion and that he was given additional time to find an attorney. Aryee does not deny that his former counsel told him about upcoming deadlines, nor does he explain why he failed to timely seek an extension to file a response. Moreover, fifty-one days had passed since Aryee's deadline for filing a response before the court entered its order. Aside from vague assertions about his difficulties

28

locating counsel, Aryee provides no explanation for this extraordinary delay.

¶ 67    As it relates to the "surprise" Aryee alleges resulted from the timing of the district court's quick turnaround, any such surprise was unwarranted. The district court put Aryee on notice that if he failed to obtain counsel by September 1, that the court would consider him a pro se litigant. Even after Aryee failed to abide by this deadline, the court gave Aryee's presumptive counsel an extension until noon on September 7 to confirm their representation. Provided such confirmation was timely received, the court also agreed to provide appearing counsel until September 14 to file a response to the motion for summary judgment. Once again Aryee failed to abide by this deadline. And only then did the district court enter summary judgment in favor of the State.

¶ 68    Under these circumstances, we cannot conclude that Aryee demonstrated excusable neglect for his failure to timely respond. Accordingly, the district court did not err by denying the post-trial motion.

## VII.   Disposition

¶ 69    The district court's judgment is affirmed.

JUDGE PAWAR concurs.

JUDGE TOW specially concurs.

JUDGE TOW, specially concurring.

¶ 70    I agree with my colleagues that Colorado's Exoneration Act (the Act), §§ 13-65-101 to -103, C.R.S. 2024, is constitutional and that the district court did not err by denying Isaac Aryee's claim for compensation. I briefly write separately to point out a possible — and likely unintended — gap in the scope of the Act.

¶ 71    I begin by noting that, though not argued by the People (perhaps because of the very textual ambiguity I now address), there is a far more compelling reason that Aryee is not entitled to compensation: Even if his purported birth certificate were authentic, it would not prove his actual innocence.

¶ 72    In finding Aryee guilty of aggravated sexual assault on a child, the jury specifically found that Aryee accomplished or facilitated the sexual contact on K.W. by force. Even if Aryee could convince a jury that K.W. was nineteen years old at the time, he still committed a felony sex offense. *See* § 18-3-404(1), (2)(b), C.R.S. 2024 (subjecting a victim to sexual contact by force); § 18-3-401(1), (4)(a), C.R.S. 2024 (inflicting sexual penetration or intrusion by force). (While each of these crimes requires proof of lack of consent, the

31

jury's finding that Aryee forcibly raped K.W. conclusively establishes her lack of consent.)

¶ 73   Under the Act, Aryee can prove that he is actually innocent only if he demonstrates by clear and convincing evidence that he was "factually innocent of any participation in the crime at issue." § 13-65-101(1)(a)(II).  But does "crime" mean the specific charge?  Or does it mean the criminal act?  I suggest that it is the latter but acknowledge that it is unclear.

¶ 74   First, I note that other aspects of the statutory definition of actual innocence have broader language than "the crime at issue." For example, a petitioner is not actually innocent if he solicited, conspired, or attempted to commit, or was a complicitor or accessory in the commission of, "the crime at issue *or any crime factually related to the crime at issue.*"  § 13-65-101(1)(a)(III)-(VII) (emphasis added).  I submit that this language can support either reading — it could mean factually related to the actual charge or factually related to the criminal act.

¶ 75   Next, the Act provides that the district court shall not declare a person to be actually innocent unless it determines that "[t]he person committed neither *the act or offense* that served as the basis

for the conviction and incarceration that is the subject of the petition, nor any lesser included offense thereof." § 13-65-102(3)(a), C.R.S. 2024. As this case makes clear, there are situations in which the petitioner's evidence reflects guilt of a factually related crime that is not a lesser included offense. But is the inclusion of "the act" in the statute sufficient to account for that? Again, I recognize that it is not entirely clear and suggest that the General Assembly may wish to revisit this language.

¶ 76 Ultimately, however, in my view, the language is broad enough to cover the factual scenario before us. Aryee's own evidence in no way suggests that he did not commit "the act" of forcibly raping K.W. — it merely suggests that she was an adult, not a child, when he did so. Thus, the district court could not have found him to be actually innocent.

¶ 77 At the very least, on these facts, it simply cannot be said that Aryee's conviction "was the result of a miscarriage of justice," which is also a required component of the definition of actual innocence. § 13-65-101(1)(a)(I). Thus, I concur in the judgment that Aryee, as a matter of law, has not demonstrated that he is actually innocent and, consequently, is not entitled to compensation.