24CA2071 Sysco Denver v White Winston 11-26-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA2071
City and County of Denver District Court No. 20CV31668
Honorable Jon J. Olafson, Judge

---

Sysco Denver, Inc., a division of Sysco USA I, Inc., and Sysco Kansas City, Inc.,

Plaintiffs-Appellees,

v.

White Winston Select Asset Funds, LLC, a Delaware limited liability company,

Defendant-Appellant.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE MEIRINK
Fox and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 26, 2025

---

S&D Law, R. Stephen Hall, Michael L. Schlepp, Denver, Colorado, for Plaintiffs-Appellees

Coan, Payton, & Payne, LLC, Brett Payton, Greeley, Colorado, for Defendant-Appellant

¶ 1    After White Winston Select Assent Funds, LLC (White Winston), failed to make timely payments under an agreement between it and Sysco Denver, Inc. (Sysco), Sysco moved to enforce the agreement.  The trial court entered judgment in Sysco's favor.  White Winston appeals, and we affirm.

## I.    Background

¶ 2    In 2014, Sysco agreed to supply food and restaurant supplies to various restaurants operated by Larkburger of Colorado, LLC; Larkburger, Inc.; Larkburger of Kansas, LLC; and Larkburger of Missouri, LLC (collectively, Larkburger).  As of February 2019, Larkburger owed Sysco approximately $240,000 for past deliveries to several Larkburger locations.  Because Larkburger failed to comply with its contract with Sysco, White Winston — Larkburger's first position secured lender — assumed control over Larkburger's operations.  White Winston made a few payments to Sysco but ultimately failed to pay Sysco the amount that Larkburger owed.

¶ 3    Sysco sued Larkburger and White Winston, seeking $802,297.26 in damages.  Larkburger never entered an appearance in the case, so Sysco moved for default judgment against Larkburger.  The court ordered the clerk to enter default against

1

Larkburger under C.R.C.P. 55(a), but it denied Sysco's motion for default judgment "at this time."

¶ 4    Three days before trial was set to begin, Sysco and White Winston entered into a "Purchase, Sale and Settlement Agreement and Mutual Release" (the Agreement). Per the Agreement, White Winston agreed to pay Sysco $600,000, over two installments, for any default judgment entered against Larkburger in the underlying case (the Judgment), which Sysco would assign to White Winston. If White Winston failed to timely and successfully pay the $600,000 purchase price, that would trigger the Agreement's default provision, which required White Winston to pay Sysco one-third of the unpaid amount plus interest in addition to the original $600,000.

¶ 5    Sysco and White Winston filed a signed "Notice of Settlement and Stipulation" (the Notice) with the court on February 25, 2022. The Notice informed the court that the parties (1) had reached an agreement resolving the pending claims between them; (2) agreed that if either party defaulted under the Agreement, the nondefaulting party could file a motion to enforce the Agreement with the court; and (3) requested that the court enter a default

judgment against Larkburger. The Notice also asked the court to vacate the trial and indicated that the parties anticipated filing a "Stipulation for Dismissal with Prejudice" (the Stipulation) within seven days after Sysco received payment in full but no later than October 6, 2023. The Notice and the Stipulation were attached as exhibits to the Agreement. On February 28, 2022, the court vacated the trial and entered default judgment against Larkburger.

¶ 6 Consistent with the Agreement, White Winston paid Sysco the first $300,000 installment, but it did not pay the second $300,000 installment. Sysco notified White Winston that White Winston had breached the Agreement by failing to make the second $300,000 payment. Sysco demanded the payment plus $100,000 in liquidated damages as detailed in the Agreement's default provision. Sysco also advised White Winston that if it failed to pay the $400,000 within ten days, the Judgment would not be released to it and would instead be released back to Sysco. Sysco filed a motion to enforce the Agreement and for an entry of judgment against White Winston.

¶ 7 The trial court conducted an evidentiary hearing where two witnesses testified. At the hearing, Mark Kane, Sysco's director of

3

credit and collections, testified that the purpose of the Agreement was to settle the litigation between the parties *and* allow White Winston to purchase the Judgment. In contrast, Todd Enright, a partner with White Winston, testified that the Agreement's sole purpose was for White Winston to purchase the Judgment.

¶ 8 The trial court concluded that the Agreement operated as a binding settlement agreement and that White Winston was required to pay the remaining $300,000 installment with the accrued interest detailed in the Agreement's default provision. The trial court also found that Sysco was entitled to interest accruing at the rate of 12% per annum from October 2, 2023, and ordered White Winston to pay Sysco the amounts due in accordance with the Agreement.

## II. Analysis

¶ 9 White Winston claims that (1) the trial court erred by interpreting the Agreement as a settlement agreement, which required it to pay the second installment; (2) the trial court erred by requiring it to pay the second installment without Sysco's assignment of the Judgment; and (3) the trial court's findings and

4

analysis of the Agreement were not supported by the evidence presented. We disagree with each contention.

### A. The Court Properly Construed the Agreement, in Part, as a Settlement Agreement

¶ 10 White Winston contends that the trial court erroneously interpreted the Agreement as a settlement agreement that required White Winston to pay, as an "absolute obligation," the second $300,000 installment to Sysco. We disagree.

### 1. Standard of Review and Applicable Law

¶ 11 The interpretation of a contract is a question of law we review de novo. *Ad Two, Inc. v. City & County of Denver*, 9 P.3d 373, 376 (Colo. 2000). When interpreting a contract, our primary goal is to give effect to the parties' intent. *French v. Centura Health Corp.*, 2022 CO 20, ¶ 25. We discern intent primarily from the language of the contract itself. *Id.*

¶ 12 To determine intent, we must first determine if the contract terms are ambiguous. *Id.* In doing so, we construe the contract's language based on the plain and generally accepted meaning of the words. *Id.* If the contract is unambiguous, we will enforce it as written. *Id.* The mere fact that the parties disagree about a

contract's interpretation doesn't establish ambiguity itself; rather, a contract is ambiguous when its terms are "susceptible of more than one reasonable interpretation." *Id.* Absent ambiguity, we will not look beyond the four corners of the agreement to determine the meaning intended by the parties. *Ad Two*, 9 P.3d at 376-77.

## 2. Discussion

¶ 13 White Winston argues that the Agreement's plain language "makes clear that the only transaction and exchange of consideration were the payments in exchange for the Judgment." And because the Agreement does not expressly mention settling the underlying case, the Agreement does not function as a settlement agreement. We are unpersuaded.

¶ 14 The Agreement contains ample language evidencing the parties' intent to settle the claims between them. To begin, the Agreement's penultimate "whereas" clause, which sets the stage by detailing the circumstances leading to the document's creation, indicates that, "to avoid the uncertainty of trial[,] the Parties to this Agreement now wish to resolve all claims among them."

¶ 15 The Agreement also contains "mutual release" provisions, in which the parties agree

> to release, acquit and forever discharge [the other party] from any and all damages, losses obligations, indebtedness, demands, claims, attorneys' fees, causes of action, and controversies whether in law or in equity . . . whether presently known or unknown, direct or indirect, that [the releasing party] now ha[s] or may have against [the other party], including but not limited to, any claims which were or could have been asserted in the Civil Action.

Likewise, the Agreement uses the term "settlement" several times, including in section 4.0, which provides that the parties "agree not to disclose the amount of this settlement and to keep said information strictly confidential."

¶ 16    Finally, the Notice filed with the court (and included as an exhibit to the Agreement) refers to the Agreement as a settlement agreement and explains that the parties have "reached a confidential agreement resolving the pending claims between them" and have stipulated to the court's "continued jurisdiction . . . for purposes of enforcement of the settlement agreement."

¶ 17    The Agreement's plain language is unambiguous. It was drafted by sophisticated parties and demonstrates the parties' intent to avoid trial, settle their claims, and mutually release each other from current and future causes of action. We therefore

conclude that the Agreement functions as a settlement agreement and that the trial court did not err by interpreting it as such.

## B. The Agreement Required Payment of the Second Installment

¶ 18    White Winston argues that the trial court erred when it concluded that the Agreement required White Winston to pay the second installment even after Sysco "terminated the assignment" of the Judgment, and no "bargained-for consideration" existed. We disagree.

### 1. Standard of Review and Applicable Law

¶ 19    As mentioned, contract interpretation is a question of law that we review de novo, *Fed. Deposit Ins. Corp. v. Fisher*, 2013 CO 5, ¶ 9, and our primary goal is to effectuate the parties' intent. *Ad Two*, 9 P.3d at 376. We ascribe the ordinary meaning to the language used, *Weitz Co. v. Mid-Century Ins. Co.*, 181 P.3d 309, 312 (Colo. App. 2007), and we will not read any term to be superfluous or meaningless. *Ctr. for Wound Healing & Hyperbaric Med., LLC v. Kit Carson Cnty. Health Serv. Dist.*, 2024 COA 24, ¶ 17. When interpreting a contract, we consider and give effect to all its provisions. *Newflower Mkt., Inc. v. Cook*, 229 P.3d 1058, 1061 (Colo. App. 2010) ("Our primary obligation is to implement the

8

contracting parties' intent according to the contract's plain language and meaning by giving effect to all provisions so that none is rendered meaningless.").

### 2. The Agreement's Relevant Provisions

¶ 20    The relevant purchase and sale provisions of the Agreement are as follows:

> *1.0 Purchase and Sale: Settlement*
>
> 1.1 Subject to the terms and conditions set forth herein, Sysco . . . agrees to sell and assign to White Winston, and White Winston agrees to purchase from Sysco, Sysco's default judgment(s), if any, against Larkburger . . . in the Civil Action (the "Judgment").
>
> 1.2 In consideration for the Judgment, White Winston agrees to pay to Sysco . . . $600,000 . . . in two installments: . . . $300,000 to be paid to Sysco no later than April 1, 2022; and another . . . $300,000 to be paid to Sysco no later than the earlier of:
>
> (a) Ten (10) business days following receipt by White Winston of payment in full for any settlement or judgment in the unrelated civil action captioned *White Winston Select Asset Funds, LLC and GT Acquisition Group v. Good Times Restaurants, Inc.* and assigned United States District Court for the District of Delaware Civil Action No. 1:19-cv-2092-SB; or
>
> (b) October 2, 2023.

### 3.    Discussion

¶ 21    White Winston does not dispute that it failed to make the second payment.  Rather, it contends that because Sysco "terminated the assignment of the Judgment," White Winston was not required to make the second $300,000 payment because the bargained-for consideration was no longer available.  And, in the absence of any consideration, the Agreement was unenforceable. Thus, according to White Winston, the trial court erred by allowing Sysco to receive a total of $700,000 and to retain the Judgment without providing White Winston anything in return.

¶ 22    In support of its argument, White Winston asks us to focus on the language of section 1.2, providing that, "[i]n consideration for the Judgment, [it] agree[d] to pay to Sysco . . . $600,000."  But White Winston disregards the rest of section 1.2 and section 6.0, which details the consequences of White Winston's failure to pay. Because we must construe the contract as a whole and cannot consider specific phrases and terms in isolation, we decline White Winston's request to review a sentence in section 1.2 in a vacuum.

¶ 23    White Winston agreed to pay Sysco two installments of $300,000 for the Judgment.  It paid the first, and the second was

10

due (1) within ten business days after White Winston received a full settlement or judgment in an unrelated federal case; or (2) before October 2, 2023, whichever came first. White Winston did not pay the second installment by October 2, which triggered the Agreement's default provision. Under that provision,

> [i]n the event White Winston fails for any reason to timely and successfully pay the settlement amounts identified in Section 1.2 above, in addition to the full [$600,000] settlement sum less any amounts paid by or on behalf of White Winston to Sysco, White Winston agrees to immediately pay an additional sum equal to one-third (1/3) of the unpaid amount.

¶ 24   The Agreement's plain language reflects that White Winston would pay Sysco at least $600,000 for the Judgment; nowhere in the Agreement does it indicate that Sysco had to assign the Judgment to White Winston *before* any payment was made. Section 1.3 of the Agreement provides the opposite — that the "Escrow Agent shall hold the Assignment Documents in escrow until receipt by the Escrow Agent of written notice . . . that the Purchase Price has been paid in full." That section also provides that "[i]f White Winston fails to make timely payment pursuant to paragraph 1.2 above, the Assignment Documents shall be released to Sysco

11

pursuant to the Escrow Agreement and shall be void without the need for further proceedings."

¶ 25 White Winston's failure to timely pay the second $300,000 installment triggered two contractual consequences under the Agreement. First, White Winston was subject to the default provision, which required it to pay Sysco the remaining $300,000 plus another $100,000 (one-third of the unpaid amount of $300,000) in liquidated damages. Second, the escrowed assignment documents conveying the Judgment to White Winston were void. White Winston cannot argue that the trial court erred by requiring payment of the second $300,000 because the Agreement did not excuse White Winston's obligation to make that payment under any circumstance.

¶ 26 White Winston's argument that the bargained-for consideration wasn't available because Sysco terminated the assignment of the Judgment is misplaced. The Judgment was available until White Winston failed to make the second payment in a timely manner. Had White Winston timely made the second payment, it would have triggered delivery of the Judgment under section 1.3. Simply put, the plain language of the Agreement

demonstrates that the parties intended to make the assignment of the Judgment contingent on the timely receipt of full payment and that full payment (plus penalty) was required regardless of whether White Winston lost its claim to the Judgment.

¶ 27 Further, as provided in section 1.4 of the Agreement, neither the Judgment nor its assignment were guaranteed:

> White Winston expressly acknowledges and agrees that the parties subject to the default judgment(s), and the amounts of the default judgment(s), are currently unknown. White Winston expressly assumes the risk that the default judgment(s), if any, ultimately entered by the Denver County District Court in the Civil Action may differ from the default judgment(s) requested by Sysco in its Motion for Entry of Default Judgments and Renewed Motion for Entry of Default Judgments . . . .

¶ 28 Despite the uncertainties surrounding the Judgment and its assignment, White Winston knowingly assumed that risk and the inherent possibility that the Judgment, part of the "bargained-for consideration," was not guaranteed or might be less than what White Winston expected. We conclude that per the terms of the Agreement, White Winston was required to pay the full purchase price before Sysco was required to assign the Judgment and even if

13

it ultimately lost the right to receive the assignment due to its failure to timely make the settlement payments.

¶ 29     Finally, we reject White Winston's claim that, because Sysco was not required to assign the Judgment, it would receive no consideration for its payment of $700,000.  When the Agreement is read as a whole, the parties exchanged consideration beyond White Winston's payment for Sysco's assignment of the Judgment.  At the parties' request, the court vacated trial, and the parties agreed to mutually release all claims against one another.  Each party was able to avoid additional litigation costs and the uncertainty of trial, and each party was assured a mutually beneficial resolution.

C. The Record Supports the Trial Court's Findings and Analysis of the Agreement

¶ 30 White Winston contends that the trial court's findings and analysis of the Agreement were not supported by the evidence presented.[1] Again, we disagree.

1. Standard of Review and Applicable Law

¶ 31 We defer to the trial court's factual findings unless they are clearly erroneous. *Maphis v. City of Boulder*, 2022 CO 10, ¶ 14. This standard recognizes that, unlike us, the trier of fact is in the best position to resolve disputed factual issues, determine witness credibility, assign weight to testimony, and draw inferences from the evidence. *Target Corp. v. Prestige Maint. USA, Ltd.*, 2013 COA 12, ¶ 24. We review de novo the court's conclusions of law, *Premier*

---

[1] Sysco claims this issue was not preserved because White Winston failed to identify "the precise location in the record where the issue was raised." C.A.R. 28(a)(7)(A). We disagree. While the appellate rules require parties to identify where in the record the issue was raised, a citation (or lack thereof) is not indicative of preservation. Rather, as long as a party presents to the trial court the sum and substance of the argument made on appeal, we will consider it properly preserved. *Madalena v. Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 50. We admonish White Winston for not complying with C.A.R. 28(a)(7)(A) because it creates needless work for this division, but whether the evidence supports the trial court's order is an issue that was preserved as reflected in the trial court's order and the evidentiary hearing's transcript. Accordingly, we will review it.

*Members Fed. Credit Union v. Block*, 2013 COA 128, ¶ 27, including its conclusions on questions of contract interpretation, *Gagne v. Gagne*, 2014 COA 127, ¶ 50.

### 2. Discussion

¶ 32    White Winston does not contend that the Agreement is ambiguous. Nevertheless, White Winston claims that the trial court should have relied on Enright's testimony that the Agreement was "a classic purchase and sale agreement where . . . earnest money is at risk if you don't perform" and that "the remedy for the other party [was] to demand their collateral back, which they did." We disagree.

¶ 33    We look to extrinsic evidence only if a contract is ambiguous. Having already concluded that the Agreement is unambiguous, we likewise conclude that the trial court was not required to use witness testimony to interpret the Agreement. And, based on what we can discern from the record, it seems that the court did not rely on any witness testimony in its analysis, instead focusing on the language of the Agreement:

> The purchase, sale, and settlement agreement
> also states that the parties, both parties,
> sought to avoid the uncertainty of trial in this

16

> dispute and wish to resolve all claims among
> them.
>
> . . . .
>
> By the express language of this agreement, the
> parties clearly and unambiguously intended to
> release the claims related to this dispute. To
> be clear, both paragraphs of section two of the
> agreement specifically reference[] this dispute.

While White Winston claims there was not enough evidence that could lead the trial court to conclude that the Agreement required White Winston pay the full purchase price in exchange for the Judgment, the Agreement itself says otherwise.

## D. Attorney Fees

¶ 34 Sysco requests an award of attorney fees under section 13.0 of the Agreement.

¶ 35 Generally, the prevailing party in a contract or tort action may not recover attorney fees from the other party, *Harwig v. Downey*, 56 P.3d 1220, 1221 (Colo. App. 2002), but parties to a contract may agree to include a provision awarding fees and costs to the prevailing party. *S. Colo. Orthopaedic Clinic Sports Med. & Arthritis Surgeons, P.C. v. Weinstein*, 2014 COA 171, ¶ 10.

¶ 36 Section 13.0 of the Agreement provides that the prevailing party "shall be entitled to recover its costs and reasonable

17

attorneys' fees from the opposing party" in any legal action brought to construe or enforce the Agreement's provisions. But section 13.0 limits recovery of attorney fees up to $5,000 "with respect to any action or other proceeding brought by Sysco to enforce payment of the Purchase Price." Accordingly, we remand the issue to the trial court to determine Sysco's appropriate attorney fees in accordance with section 13.0 of the Agreement.

### III. Disposition

¶ 37 We affirm the judgment and remand the case to the trial court to determine the appropriate amount of attorney fees consistent with this opinion.

JUDGE FOX and JUDGE BROWN concur.